[No. 1791.]

## Matt. Roberts *v.* The State.

1. Theft — Evidence — Possession of Recently Stolen Property — Cases Overruled. — It is now a settled rule in this State that if a party in whose possession goods recently stolen are found fails satisfactorily to account for his possession, the presumption of guilt arising from recent loss and possession will warrant a conviction. In so far as they announce a contrary doctrine the cases of *Hannah* v. *The State*, 1 Texas Ct. App., 582, and *Truax* v. *The State*, 12 Texas Ct. App., 230, are overruled.

2. Same — Burden of Proof. — When, in accounting for his possession of recently stolen property, the defendant gives a natural, probable and satisfactory explanation, such explanation operates to rebut the presumption of guilt which attaches to his possession, and, in order to entitle the State to a conviction, the burden of proof devolves upon it, to show that such explanation was false.

3. Same. — Bills of Sale are not deemed in law to be unquestionably infallible, and the State, in controverting their recitals, or in controverting the defendant's explanation of his possession of recently stolen property, is not confined to rebutting testimony; but when, as in this case, the evidence tends to show an acting together, conspiracy or complicity in the taking (or with a view of covering up a fraudulent taking) between a vendor in a bill of sale and a defendant charged with the theft, may require the court to

submit to the jury the *bona fides* of the bill of sale. Note a state of case wherein the charge of the court properly submitted this issue to the jury.

4. Same — Practice. — Circumstantial Evidence, as well as direct evidence, is competent to prove a fraudulent taking. Note evidence *held* sufficient to establish the fraudulent taking of a yearling.

Appeal from the District Court of Falls. Tried below before the Hon. B. W. Rimes.

The conviction in this case, assessing against the appellant a term of four years in the penitentiary as penalty, was for the theft of H. C. Osborne's yearling, in Falls county, Texas, on the 24th day of December, 1883.

H. C. Osborne was the first witness for the State. He testified that some time in September, 1883, he moved from Mustang Prairie to his present residence on Big Creek, in Falls county. He brought with him two animals of his own,— a cow and the yearling involved in this prosecution,— and a cow and yearling which belonged to J. W. Waters. Some time after his removal to his present residence, the witness turned out his cow and yearling, and they ranged about the neighborhood within the radius of a half mile from the house. Within ten days the yearling was missing from the range, and, though the witness looked for it several days, he failed to find it. When it left, the yearling was in the witness's mark — a crop and underbit in the right, and a swallow fork and overbit in the left ear. It was unbranded. About February 12, 1884, witness and Messrs. Parton and Brooks started out in company to look for this and other missing animals. On Blue Ridge, near W. A. Stone's residence, the parties named met Jesse Brothers and others, driving a herd of cattle. The herd turned off the road as the party approached, and the witness saw what he supposed to be his missing yearling and one of Mr. Waters's yearlings, which he had in his possession. Investigation proved these animals to be the ones witness supposed them to be. Both had been recently branded D 8. One of the ear marks of the witness's yearling had been changed. Both of the yearlings were marked alike, except the ears were reversed. The mark in the left ear of the witness's yearling had been changed to an overslope and underbit. The brands were peeling off and appeared to be a month or six weeks old. Witness never consented that the defendant or other person should take the yearling. Witness knew nothing about the defendant's connection with the yearling. Witness claimed and recovered the two animals from Jesse Brothers.

Jeff. Parton, for the State, testified substantially as did the witness Osborne, adding that the defendant's brand was H A, under a bar. He did not know whether or not the defendant had any cattle. Brooks corroborated Parton.

Mr. Yates identified the yearling involved in this prosecution as the property of the prosecuting witness Osborne. He knew the animal perfectly well.

Mack Waters testified, for the State, that he had known the defendant from his boyhood. On one occasion just prior to Christmas, 1883, the witness and the defendant, who were passing by Osborne's field, saw the two yearlings mentioned by the witnesses grazing in the field. The defendant remarked: "It would be an easy matter to get away with those two yearlings." In reply the witness remarked that one of them belonged to his father. Defendant made no further remark about the yearlings. The two rode on together to the house of Mr. Simmons, where witness stopped. The defendant rode on. The defendant owned some horses, and for aught that the witness knows to the contrary, may own a few head of cattle.

The field in which witness and the defendant saw the two yearlings was near Osborne's house. Witness knew his father's yearling, and knew that it was in Osborne's possession. That animal was neither marked nor branded. Osborne's yearling was marked but not branded. Witness was familiar with stock cattle, and had branded a great many cattle. He was of the opinion that the brand D 8, found on the two animals when they were recovered, was run on each, and was not put on with a regular brand-iron. These brands were not above a month old when the animals were recovered.

Mr. Erskine testified, for the State, that some time in January, 1884, he saw four or five head of cattle in the Forbes pasture, about four miles from the defendant's residence, and about two miles from Osborne's residence. They were branded D 8, which brands appeared to be some three or four weeks old. The fence of the pasture was down and cattle could go in and out at will. Witness did not know how the cattle referred to got into the pasture.

Mr. Briscoe testified, for the State, that he moved to the Forbes valley place some time before Christmas, 1883, and lived for a time in the pasture spoken of by the witness Erskine. While living there he saw four or five head of cattle in the pasture, freshly branded D 8. Some of these animals were yearlings. Witness did not know who put these animals in the pasture. The fence, however, at one place was down, and animals could go in or out at will. Defendant told the witness that he sold those animals to Jesse Brothers, but

did not say whether he sold them by delivery or on the range.  He also told the witness that he bought them from a man named Webb. Defendant made these statements about the time that Jesse Brothers was arrested upon the charge of stealing the Osborne yearling.

John Waters testified, for the State, that the last time he saw his and Osborne's yearlings, prior to their recovery from Brothers, was in February, 1884. When recovered, the animals each had a six weeks old D 8 brand stamped on the side.  Witness had lived in Falls county, near Osborne's place, for twenty-five years, and was familiar with the brands given in that section.  He had never heard of the D 8 brand, and had been unable since the theft of the yearlings to trace it.  Witness knew no man named Webb.  Osborne had one of witness's cows, milking her, when the animals described were stolen.  Witness branded his yearling after it was recovered. The State closed.

James Marlin testified, for the defense, that on or about the 1st of January, 1884, he had occasion to stop for a few minutes at the residence of Mrs. Brothers in Falls county.  There were present, when he entered the house, Mrs. Brothers, William Brothers, the defendant, a Mr. Webb, and a lady whom he, Webb, called "mother." Webb held in his hands some greenback bills, the amount of which the witness did not know.  The defendant asked witness to attest the paper which, while testifying, the witness held in his hand. This paper is a complete bill of sale, conveying to the defendant two heifers and three "two-year-olds," branded D 8, dated January 1, 1884, and signed "H. W. Webb," and attested by J. P. Brothers and James Marlin as witnesses.  Witness recognized his signature, which was his only means of identifying the paper, as he did not read it at the time.  The man Webb, whom the witness never saw before and had not seen since, had a family with him and appeared to be a mover.  He was driving a herd of thirty or forty cattle, the brand on which was a D, and some other figure or letter, now forgotten by the witness.  Witness saw no fresh brands among the cattle.  Witness saw no money pass between the defendant and Webb.  This occurred at the house of Mrs. Williams, the mother of Jesse Brothers.

The motion for new trial assails the charge of the court and denounces the verdict as unsupported by law or evidence.

*Oltorf & Holland,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

White, Presiding Judge. For the purposes of the questions we propose to discuss in this case the following substantial statement of the facts is made, viz.: Osborne lost his yearling in December. In February he found it in and got it from a herd of cattle claimed by and in possession of one Jesse Brothers. When reclaimed by him, the animal was found to have been re-marked and re-branded,— the marks and brand being apparently about six weeks old,— and showing that the animal had been branded and marked recently after it was lost or stolen. This appellant said that he had sold the yearling to Jesse Brothers, and that he had purchased it from one Webb. One Marlin, a witness for defendant, testified that on the 1st of January he became a witness to an instrument of writing — he did not know what the instrument was as he did not read and was not informed of its character — which instrument, when shown him upon the witness stand, he recognized by his signature, and it proved to be a bill of sale from one Webb to defendant for some cattle, two heifers and three two-year-olds, branded D 8, the same character of brand as found by Osborne upon his yearling when he got it from Brothers's herd. Marlin had never seen Webb before, and never saw him afterwards, and it was not shown that any one else had ever seen or known him. There was no one in that section of country of that name, and he appears, so far as the record discloses, an entire stranger traveling through Falls county with some thirty or forty head of cattle in his possession, branded with the letter D and some other figure or letter not remembered by the witness. The bill of sale from Webb to defendant was not read in evidence, and is not set out in the transcript, but its contents, as stated by the witness Marlin after examining it, was "that it was a complete bill of sale to Matt. Roberts to two heifers and three two-year-olds, branded D 8, dated January 1, 1884, and signed by H. W. Webb." It will be seen that this bill of sale does not describe Osborne's calf, because it was "a yearling," and the bill of sale conveyed two "two-year-olds," unless, indeed, Osborne's calf was one of the two "heifers" mentioned in the bill of sale, which fact is not made to appear, nor is the sex of Osborne's calf anywhere stated.

We will concede, however, that the bill of sale was intended to and did convey the Osborne yearling.

Upon this statement, how does the case stand? Defendant admitted in February that he had sold the yearling to Brothers, and the evidence showed a possession in him of the animal recently after it was stolen. Suppose the jury had disbelieved and entirely

disregarded all evidence as to his purchase from Webb, or suppose there had been no evidence of such purchase at all. Would possession of property recently after it was stolen, alone and of itself have been sufficient to warrant a conviction for theft? This would depend upon the fact as to whether or not the party, when found in possession or when for the first time his possession was challenged, reasonably and satisfactorily accounted for his possession. If he did not, then the recent possession, unaccompanied by any other evidence, would be sufficient of itself to establish his guilt and warrant his conviction. The rule now settled is, that "if a party in whose possession goods recently stolen are found fails satisfactorily to account for his possession, the presumption of guilt arising from recent loss and possession will warrant a conviction." (*Belote* v. *The State*, 36 Miss., 97; 103 Ill., 82; 42 Miss., 642; 43 N. Y., 177; 65 N. C., 592; 60 Cal., 74.) No decision in our own State directly asserts a different or contrary doctrine (see 26 Texas, 200; 30 Texas, 444; 41 Texas, 483; 43 Texas, 431, 616; 44 Texas, 430 and 616; Clark's Crim. Law, p. 259, and note; 15 Texas Ct. App., 115, 356, 363, 551), unless, indeed, it be found in the opinion of Judge Winkler in *Hannah* v. *The State*, 1 Texas Ct. App., pp. 582–3, and cited as authority in *Truax* v. *The State*, 12 Texas Ct. App., 230. That case will be overruled in this regard.

But in this case defendant did explain his possession, and his explanation was not only natural and probable, but satisfactorily accounted for his possession. He said he had purchased the property from Webb, and he proved up a bill of sale executed to him by Webb for the animal. This entirely rebutted the presumption of guilt arising from the recent possession, and where this is the case the rule is that it devolves upon the State to show that the explanation thus reasonably, naturally and satisfactorily accounting for his possession was false. (*Garcia* v. *The State*, 26 Texas, 210, and numerous other authorities.) Well, how is the State to do this? By introducing rebutting evidence to show that the statement is untrue or false? This it may be impossible to do. In the case before us it was doubtless impossible for the State to do so, because there was the bill of sale proven up as an indisputable fact going to establish the truth of the statement. What statement? That he had purchased the animal from Webb. If all bills of sale evidenced only *bona fide* transactions, then the defense was clearly made out. Human experience nor the law, unfortunately for such defenses, does not stamp bills of sale with unquestioned infallibility in this regard. Experience as well as the law says to the defendant, true, you say

you bought from Mr. Webb and your bill of sale goes to prove it, but still there is the further question to be solved, and that is, "Is the bill of sale conclusive of the fact that you did purchase from Mr. Webb?" "Could not you and Mr. Webb have fixed up the bill of sale without a sale or purchase having ever really been made?" We are of opinion the evidence in this case tended most strongly to warrant the belief that such was the case, and especially the testimony of defendant's witness Marlin in detailing the facts connected with his witnessing the bill of sale. This evidence, taken in connection with the other evidence adduced, strongly impresses us with the conclusion that the execution of the bill of sale was but a sham and device resorted to and procured by defendant to cover up his fraudulent taking of the property. The rule is, "if the evidence tends to show an acting together, conspiracy or complicity in the taking (or with a view to the covering up of a fraudulent taking), between the vendor in a bill of sale and a defendant charged with the theft, then, indeed, it would not only be right but highly proper for the court to submit the *bona fides* of the bill of sale that the jury might ascertain and find whether or not it was a sham or device conceived to cover up and avoid the crime of theft. (Clark's Crim. Law of Texas, p. 262, and note; *Prator* v. *The State*, 15 Texas Ct. App., 363.)

This issue was submitted in his charge to the jury by the learned judge presiding below, and his charge upon the different phases of the case was an admirable and full exposition of the law.

As to the question of defendant's having fraudulently *taken possession*, that is, *actual* possession, of the animal stolen, the charge was most clear and explicit. A fraudulent *taking* may be proven by circumstantial, as well as by direct, evidence. In this case, if the jury concluded that the bill of sale was but a sham and device, then the other evidence fully warranted them in concluding also that defendant had *taken* actual manual possession of the yearling, because, in January, and before it was found in the herd of Brothers, to whom defendant sold it, the ear marks had been altered, and the animal branded D 8. Other facts would warrant the conclusion that this was done by defendant, and this could not have been done without actual manual possession.

We have been unable to find any reversible error in this record. The trial having been a fair and impartial one, and the evidence being sufficient to support the judgment, it is affirmed.

*Affirmed.*

[Opinion delivered October 25, 1884.]