## UNGER *v.* STATE, 42 Miss. R., 642.

### LARCENY.

Where the owner of the goods cannot be ascertained, the indictment laying them to be the property of some person unknown will be valid. But if the owner is known, such an allegation will be improper; and, on the discovery of his name on the trial, the prisoner will be acquitted. 3 Chitty Cr. Law, 949. Wherever the name of the party is known, it is absolutely necessary to insert it in the indictment, and the entire Christian name as well as the surname of the party must also be inserted.

To sustain an indictment for larceny, it must be proved that the goods alleged to be stolen are the absolute or special property of the person named as owner in the indictment, and that the offense has been committed. State v. Furlong, 19 Me., 225.

The right and power to amend an indictment for a felony in a material matter, after the expiration of the term of court at which it is found, and without the consent of the accused, is questionable.

In rendering a verdict of guilty in any case of simple larceny, the jury should always find the value of the property stolen, or the court cannot legally pronounce judgment.

In prosecutions for larceny, where the goods have been proven to have been stolen and in the possession of the accused soon afterwards, the fact of possession raises a reasonable presumption of his guilt.

Error to Claiborne circuit court. SMILEY, J.

Elias Unger, the plaintiff in error, was indicted in the circuit court of Claiborne county, on the 21st of October, 1865, for the larceny of two bales of cotton, the property of D. W. Hum-

phreys. At the December term, 1867, during the trial the indictment was amended, changing D. W. Humphreys into D. G. Humphreys. The jury returned a verdict of guilty, and upon the prisoner's motion for a new trial being overruled, he excepted and sued out this writ of error.

*J. B. Coleman*, for plaintiff in error.

1. That the change in the indictment made by the court, or by its permission, was utterly unauthorized and erroneous, we cannot for a moment permit ourselves to doubt. Its effect was to try the defendant for an offense, and upon an indictment not found by a grand jury.

"It is necessary that there should be *some person* in whom is a sufficient ownership of the things stolen; and that they should be stated in the indictment as the goods and chattels of such person." 2 Russell on Crimes, marg. p. 154.

"It is well settled that larceny may be committed by stealing goods, *the owner of which is unknown;*" but "It should be well observed, however, with respect to prosecutions for stealing goods of a person unknown, that an indictment, alleging the goods to be the property of a person unknown, will be improper if the owner be really known; and that in such case the prisoner must be discharged of the indictment so framed, and tried upon a new one for stealing the goods of the owner by name." 2 Russ. on Cr., marg. p. 162.

If, then, it is essential to the validity of an indictment for larceny, it should state the name of the real owner of the property stolen; and if, upon an indictment alleging the stolen property to be owned by some person unknown, when in fact the owner was known, the prisoner must be discharged, and a new indictment found against him. How much stronger, upon principle, is his right to a discharge when the indictment alleges the goods stolen to be the property of W., and they are proven on the trial to be the property of G.

The reason of this rule is obvious. To constitute a felonious taking and carrying away of goods, it is essential that it should be against the consent of the owner (*invito domino*). Hence, where the name of the owner is known, it is essential that it.

should be stated in the indictment, as well to enable the state to make out its case by proving that the goods were taken without the assent of the owner, as to give the prisoner an opportunity of defending himself, by showing the assent, express or implied, of the owner.

It is very clear that, at common law, the defendant would at once be entitled to a discharge from the indictment.

But it is contended that the rule of the common law upon this point has been abrogated by our statute, Rev. Code, 615, art. 262, § 57. This article provides that whenever, on the trial of an indictment, there shall appear to be any variance between the statements in such indictment and the evidence, "in the Christian or surname, or both, or other description whatever, of any person whomsoever therein named or described, or in the ownership of any property named or described therein," it shall be lawful for the court, "if it shall consider such variance not material to the merits of the case," to order such indictment to be amended according to the proof, &c.

Did this article stand alone, uncontrolled and unexplained by any other part of the statute, we should still say that the alteration made by the court in this indictment, without the consent of the grand jury which found it, and against the protest of the defendant, was wholly unauthorized by the statute itself, for the reason that the power given to the court to amend an indictment is expressly limited to cases in which "the variance is not material to the merits of the case;" and we have shown, by our citations from Russell, that in an indictment for larceny the name of the owner of property alleged to have been stolen is, in the highest degree, material—material to the state, and most essentially material to the merits of the case. McGuire v. State, 35 Miss., 367.

2. The motion for a new trial should have been sustained. The testimony was not sufficient to authorize the jury to find a verdict of guilty.

3. That the pretense that the accused was an accessory before the fact is entirely unsustained by the testimony. There is no evidence that plaintiff in error counselled, commanded, or procured the crime to be done.

*C. C. Shackleford,* for the state, contended—.

1. That the amendment to the indictment was properly made, and was immaterial in its character, and fully authorized by the statute. Rev. Code, 615, art. 262; ib., 614, art. 257; and that the right and power to amend is not limited to the term of the court is that the indictment is found.

He commented on the testimony, and insisted that it fully sustained the verdict of the jury.

PEYTON, J.:

At the March term, 1866, of the circuit court of Claiborne county, the plaintiff in error was indicted for the larceny, on the 21st day of October, A. D. 1865, of two bales of cotton, the property of D. W. Humphreys, and was tried at the December term, A. D. 1867. The jury returned a verdict of guilty. The plaintiff in error moved the court for a new trial, on the following grounds:

1. Because the court allowed the district attorney, after the jury had been elected and sworn, and after the examination of witnesses for the state had been commenced, to change the name of the owner of the cotton alleged to have been stolen from D. W. Humphreys, as charged in the indictment, to D. G. Humphreys, without the consent and against the protest of the prisoner, and without the consent of the grand jury who found the indictment.

2. Because the verdict of the jury was against the instructions of the court, and unsupported by the evidence.

3. Because the court erred in giving the instruction asked for by the state.

4. Because, in his opening argument, the district attorney never made or alluded to any liability on the part of the prisoner *as accessory before the fact,* but presented it for the first time in his closing argument, and argued the facts to sustain it before the jury, to which the counsel for the prisoner had no opportunity to reply.

5. And because the verdict of the jury was evidently the result of a strong prejudice on the part of a portion of them against the defendant and one of his witnesses.

This motion was overruled by the court, to which the defendant below excepted; and the defendant was thereupon sentenced by the court to confinement in the penitentiary of the state for the term of three years. The plaintiff in error brings the cause into this court, and makes the following assignment of errors:

1. The said circuit court erred in permitting the district attorney to amend and alter the indictment in a material particular, twenty-one months after said indictment had been found, without the consent of the grand jury who found it, and against the protest of the plaintiff in error.

2. The said circuit court erred in overruling the motion of the plaintiff in error for a new trial.

The first assignment of error presents two questions for our consideration: 1. Whether the indictment, as found and returned by the grand jury, was sufficient; and 2. If not, whether it could be legally amended in matter of substance after the term of the court had expired at which it was found, without the consent of the defendant.

To protect the innocent and punish the guilty are the two great objects to be kept in view in the administration of criminal jurisprudence. While, upon the one hand, the law will hold the offender to a strict accountability, it should, upon the other, extend to the accused all possible facilities for a fair, full, and impartial trial. And as the accused is always presumed innocent until convicted, no course should be adopted that would deprive him of that fair trial so humanely secured to him by the law.

Simple larceny is defined to be the felonious taking and carrying away the personal property of another. Where the owner of the goods cannot be ascertained, the indictment laying them to be the property of some person unknown will be valid. But if the owner is known, such an allegation will be improper, and on the discovery of his name on the trial, the prisoner will be acquitted. 3 Chitty's C. L., 949.

Hawkins lays it down that it is more important to have the correct Christian name than the surname of the defendant in the indictment. 2 P. C., 317. But the modern decisions make no

distinctions between a misnomer of the surname and Christian name. In either case, if it be a substantial variance from the true name, it is good cause for abatement of the proceedings. Lynes v. The State, 5 Porter, 241. And whenever the name of the party injured is known, it is absolutely *necessary* to insert it. Thus, in an indictment for larceny, though the goods may be laid to be the property of *persons unknown*, if that is actually the case, yet, if the owner be really known, the allegation will be improper, and the prisoner must be discharged from that indictment, and tried upon a new one, rectifying the mistake. 1 Chitty's C. L., 213.

To sustain an indictment for larceny, proof must be adduced that the goods alleged to be stolen are the absolute or special property of the person named as owner in the indictment, and that the offense has been committed. The State v. Furlong, 19 Maine, 225.

We think it essential to the legal sufficiency of an indictment for larceny, that the entire Christian name, as well as the surname of the owner of the goods alleged to be stolen, should, if known, be set forth in the indictment.

The indictment, as found and returned into court by the grand jury, charges the plaintiff in error with the larceny of two bales of cotton, the property of D..W. Humphreys, and which was afterwards amended to D. G. Humphreys; and upon the trial it appeared from the testimony that the cotton alleged to be stolen was the property of David George Humphreys. This was a fatal defect in the indictment, which might have been taken advantage of before verdict. David George was the owner's Christian name, and it needs no argument to prove that D. W. or D. G. and David George are different names. This defect in the indictment is, however, cured after verdict by the statute of jeofails. Rev. Code, 573, art. 7.

In the present attitude of this case, we deem it unnecessary to decide the second question raised by the first assignment of error, as to the legal right and power to amend an indictment for felony in a matter material, after the expiration of the term of the court at which it was found, without the consent of the accused; yet, without giving any definite opinion upon the

subject, we are inclined to think it would be a doubtful exercise of power.

There appears, from the record, to have been no evidence given to the jury of the value of the property alleged to have been stolen. In rendering a verdict of guilty, in any kind of simple larceny, the jury should always find the value of the property stolen, that the court may know what sentence they ought to pronounce, or it will be like a verdict in a civil action, where the jury find for the plaintiff, but neglect to give damages. 3 Chitty's C. L., 928; 5 East P. C., 741.

Grand larceny, under our law, is the stealing of the personal property of another, above the value of twenty-five dollars, and is punishable as a felony in the penitentiary of the state.

Petit larceny is the stealing of the personal property of another, of the value of twenty-five dollars or under, and is a misdemeanor punishable by fine and imprisonment in the county jail.

Hence, it is apparent that the verdict should fix the value of the property stolen, so that the court may know with certainty of which offense the defendant has been convicted; otherwise the court cannot pass sentence upon the prisoner.

In this case, the verdict is a general one of guilty, without finding the value of the property stolen, or specifying whether the offense is grand or petit larceny. Nothing can be taken by implication in a criminal case. The clear and absolute ascertainment of facts alone warrants the character of the punishment pronounced by a court of justice. No possible doubt should be entertained whether the verdict of the jury warrants the judgment to be given. Where inference and intendment are to be resorted to, to supply the defect in the verdict, as to the value of the property stolen, as in the present case, doubts cannot but arise as to the correctness of such inference and intendment of the law.

It is one of the boasted principles by which the character of our criminal jurisprudence is said to be marked, that in all cases of doubt the criminal shall be entitled to the benefit of it; and it is not more wise than it is humane.

In prosecutions for larceny, where the goods are proved to

have been stolen, it is an admitted rule of law, applicable in these cases, that possession by the accused soon after they were stolen, raises a reasonable presumption of his guilt. Such evidence is sufficient to make out a *prima facie* case on the part of the state, proper to be left to the jury, and, without opposing testimony, would generally be sufficient to sustain a verdict of guilty. But in this case, the strength of that presumption is much weakened, if not entirely destroyed, by the testimony of John C. Humphreys, a witness on the part of the state, who testified that, soon after the cotton was taken, he noticed tracks of feet in his pasture where the cotton was put into the wagon, and that they were apparently such as would be made by negro brogans; and these were the only tracks to which he testifies. This raises a strong presumption that the cotton was stolen by negroes in the absence of the accused; and there being no evidence in the record that he procured, counseled, or commanded them to take it, he could not, upon the evidence, be properly convicted, either as principal in the larceny, or as accessory before the fact.

For these reasons, we think the court erred in overruling the motion for a new trial.

The judgment will, therefore, be reversed, the verdict set aside, and the cause remanded for a new trial.