WELLINGTON WOOD *v.* THE STATE.

1. ASSAULT WITH INTENT TO KILL. *Indictment. Felonious intent, how charged.*
    An indictment which charges an assault "with intent feloniously, willfully, and with malice aforethought to kill and murder" is not bad because it fails to charge that the assault was "feloniously" made.

2. SAME. *Criminal practice. Indictment. Amendment of. Name of party assaulted. Section 3081, Code of 1880, applied.*
    It is no ground for a reversal here, (§ 1433, Code 1880), the objection not having been raised in the court below, that there is a variance between the indictment and evidence as to the first name of the party assaulted; and if such objection had been raised in the court below, the indictment could have been amended so as to conform to the proof, under § 3081, Code of 1880.

3. ASSAULT WITH INTENT TO KILL. *Evidence. Collateral issue. Cross-examination of witness. Case in judgment.*

On the trial of one charged with an assault with intent to kill, the sole question being whether during the progress of a quarrel the accused stabbed his antagonist with a deadly weapon while the former was in no real or apparent danger, the origin of such quarrel is a collateral matter and evidence thereto inadmissible, and if a witness for the State testify thereto without objection, the refusal of the court to allow defendant to cross-examine such witness in reference to such collateral matter is not such a prejudicial error as to cause a reversal of a judgment of conviction.

4. SAME. *Justification of. Insulting words. Section 3080, Code of 1880, construed.*

Under ? 3080, Code of 1880, which provides that, " In all trials of indictments for assault and battery or for an assault," any insulting words used by the assaulted person at the time of the assault may be given in evidence in justification thereof, such words may be given in evidence on an indictment for assault with intent to kill and murder, and the jury may consider whether the same constitute excuse or justification, as provided in the statute referred to.

5. SAME. *Instruction. Similarity Non-applicability. Practice.*

The circuit court should refuse an instruction not applicable to the evidence in the case, and it may refuse an instruction being substantially the same as one already given.

6. SAME. *Criminal practice. Instruction as to " law of nature." Repetition.*

Where the court has instructed the jury, in behalf of the accused, as to the doctrine of self-defense as recognized by the law of the State, it may properly refuse an instruction which simply announces the same doctrine based upon the law " of nature."

7. SAME. *Instructions given after argument begun. Practice.*

The circuit court may. after argument begun by counsel for the defendant, give additional instructions or modify those already given, at the request of the district attorney.

8. SAME. *Defendant may be convicted of less offense. Instruction. Practice.*

Under an indictment for assault and battery with intent to kill and murder, the defendant, (under ? 2711, Code 1880), may be convicted of an assault and battery or a simple assault, and it would be improper to instruct the jury to acquit unless the identical offense charged be proven.

9. SAME. *Killing by accident. Section 2879, Code of 1880. Use of deadly weapon.*

Under ? 2879, Code of 1880, which provides that " The killing of a human being shall be excusable when committed by accident and misfortune, in the heat

of passion, upon any sudden and sufficient provocation, or upon any sudden combat, without any dangerous weapon being used, and not in a cruel and unusual manner," does not excuse any offense in the commission of which a deadly weapon is used.

10. SAME.  *Practice.  Argument.  Privileges of district attorney.*

A district attorney is subject to the same restrictions and control by the court in the examination of witnesses and in argument as other counsel, but statements made in argument by him, merely inadvertent and not intended to prejudice the accused, and not reasonably calculated to have that effect, will not, though improper, cause a reversal of judgment of conviction.

APPEAL from the Circuit Court of Oktibbeha County.

HON. W. M. ROGERS, Judge.

Wellington Wood was indicted for assault and battery with intent to kill and murder Socratus Scott, called "Crate Scott." The evidence for the State tended to show that Wellington, his brother (Lee Wood), and others went to the house of "Crate" and Joe Scott and began a friendly conversation with them which shortly turned in reference to certain hogs; that during the progress of the conversation Wellington Wood charged the Scotts with marking in their own mark certain hogs belonging to him; that "Crate" Scott thereupon called Wellington Wood a "damn liar" and struck at him across the fence, the former being inside and the latter outside of the yard; that Wood retreated a few steps, drew his revolver, and fired without effect; that Scott seized a piece of board about three feet long, one-half inch thick, and three inches wide, got over the fence or through the gate, and knocked the pistol out of Wood's hand; that thereupon Lee Wood rushed up and began to beat "Crate" Scott over the head with a stick, and while Scott was defending himself against Lee Wood's attack, Wellington Wood rushed up and stabbed Scott in the back with a knife, inflicting a dangerous wound.

The evidence for the defendant tended to show that he and his party had started out in search of a lost pony belonging to defendant; that one set were to go one way, and the other another, and both to meet in front of Scott's house, it being the natural and most convenient meeting-place; that defendant and his com-

panion reached the meeting-place first, and while waiting for the other searchers, who were then in sight, began to talk to the Scotts about the pony, when the conversation turned to the subject of certain hogs, when defendant charged the Scotts with marking his hogs, and that thereupon Joe Scott called him a " damn liar " and " Crate " Scott called him a " God damned liar " and struck at him, and that defendant (Wood) staggered back a few feet, drew his pistol as if to shoot, when one of his party called out to him : " You have done wrong ; give me that pistol," and that defendant raised his pistol about fifty degrees from the horizon and it went off accidentally while in that position ; that defendant then dropped his loaded pistol and thereupon " Crate " Scott struck him with the board ; that defendant staggered back as if dazed, when his brother came to his rescue, and that defendant did not go near " Crate " Scott after that, and that defendant cut Scott while the latter was striking him over the head with the board.

During the examination of Joe Scott, a witness for the State, he stated that he and his brother had not " marked " any of defendant's hogs. On cross-examination the witness was asked, "Did not you and your brother, ' Crate ' Scott, at one time just previous to the difficulty, mark one of Wood's hogs in your mark, and didn't you afterward admit it ?" The counsel for the State objected to the question, the court sustained the objection, and the defendant excepted.

The court refused the following instructions asked by the defendant :

" 1. Self-preservation and the right of self-defense is a law of nature, and if the jury believe from the evidence that the defendant, Wellington Wood, in inflicting the injury upon the plaintiff, was acting in necessary self-defense then they will find the defendant ' not guilty.' "

" 4. The law is that no words spoken by Wood to Scott, as claimed by some of the witnesses (if the jury believe from the evidence that such words were spoken), justified ' Crate ' Scott or any one either in giving Wood the ' damn lie,' the ' God damn lie,' or the ' lie,' nor would any mere words spoken by Wood to

Scott (if the jury believe from the evidence that such words were spoken), justify Crate Scott or any one in striking Wellington Wood, because the law does not allow a man thus to become the avenger of his real or fancied wrongs."

"12. In penal jurisprudence there can be no middle ground; the party must be absolutely and unconditionally guilty or not guilty, and the jury, in passing upon the guilt or innocence of the defendant, before they can legally convict, should be just as well satisfied of the defendant's guilt as if he were on trial for murder."

"13. It should ever be borne in mind that no man can be asserted to be legally guilty of an offense unless his guilt shall have been established according to the forms of law and the principles of law. In no case should a disregard of the law itself or its established forms be tolerated from any considerations of difficulty in the conviction of offenders."

"15. Any person may lawfully slay another when such slaying is done in the lawful defense of such person or any other human being, when there shall be reasonable ground to apprehend a design on the part of the person killed to commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished, and killing of a human being is excusable when done by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation."

"22. A man assaulted with a weapon or other means likely to produce great bodily harm or personal injury is not bound to wait until his antagonist is on equal terms with him, but may rightfully use the advantage he has, and in so doing is not guilty of an unlawful assault."

"23. If the defendant, even though he provoked the attack, has withdrawn from the conflict and makes no further effort to injure the opponent, his right of self-defense is not taken away, notwithstanding previous violence on his part."

The district attorney, in opening the argument for the State, said: "With the fact of marking the hogs, gentlemen, you have nothing to do, except that you know that Joe Scott stated on the stand that there was not a word of truth in the charge about

·marking the hogs." In his closing argument he said: " Here is a poor fellow who, ·as the doctor tells you, has for two long, weary years been unfit for manual labor." The court here interrupted him and said that the matter of defendant's unfitness for manual labor was excluded, ·and the jury were not to regard it. Thereupon the district attorney said: " Yes, but the doctor says his lung is collapsed, and this jury knows from that he is unfit for manual labor." To all of these remarks of the district attorney the defendant excepted.

While the counsel for the defendant was speaking the circuit court gave certain additional instructions for the State, at the request of the district attorney, and also modified the sixteenth instruction of defendant, as set out in the opinion of this court. To this action of the court the defendant excepted.

The jury found the defendant guilty, and from the judgment of the court he appealed.

· *Nash & Alexander*, for the appellant.

1. The indictment was defective, and the motion to quash and the motion in arrest of judgment ought to have been sustained. It is not sufficient to use the word " feloniously " after the statement of the intent. It should precede it and characterize the assault. The assault is the act upon which the whole charge is predicated. While the intent is that which may raise a simple ·assault to an offense of a higher grade, yet the assault is in both degrees the gravamen of the offense, the act but for which there could be no crime. It is, therefore, necessary for the assault to be charged to be felonious.

The third assignment of errors is well taken. It was competent to ask Jo. Scott on cross-examination as to the marking of the hogs.

It was competent as an original question, and certainly competent after he had been asked by the State if they had marked the hogs and had said that they had not.

The testimony, if originally incompetent, was made competent by the examination of the State's witness, Jo. Scott. He was asked if he and his brother had marked any of defendant's hogs,

and his answer was, "We have not marked any of Wood's hogs."

The State went voluntarily into this question to show, if possible, a motive on the part of Wood, and it was proper to do so, as was held by this court at the October term, 1886, in a case where the court said that such an inquiry was proper to show a motive, and it was further proper to go into the details to show the extent of the motive. Certainly after this question and its answer it was just and legal for defendant to rebut this testimony. It was competent to free himself from the imputation of being a willful calumniator, and also competent under the general rule of evidence, *i. e.,* that a witness can be cross-examined as to any matter testified about by him in order to test his accuracy and veracity.

A defendant has the right to cross-examine even upon immaterial matters when brought out by the adverse party. 1 Wharton Evidence 529.

In any view a witness may be cross-examined as to his examination-in-chief in all its bearings. Ib. 530.

2. We now notice the instructions asked by defendant and refused.

*The first charge* announces the plain, simple principle of self-defense, and we are at a great loss to know why the learned judge refused it.

We suppose the court thought it error to call this right a law of nature. The court, in the case of *Long* v. *State,* 52 Miss. 38, says that this is a truism and as an abstract charge might properly be given. Certainly when prefixed to the main and leading charge of this defendant this truism would not vitiate it. The error in refusing this charge was not cured in any other. There are other charges defining self-defense and how and under what circumstances acts are to be deemed as done in self-defense, but nowhere else did defendant seek for or obtain the charge that if he acted in necessary self-defense in inflicting this injury, the verdict should be " not guilty."

*The fourth charge* ought to have been given. It was very material to determine who was to blame in bringing on the fight.

Scott justifies his blow, which certainly begun the fight, by construing into an insult certain words spoken by Wood. We contend that under the State's own testimony, before Wood cut Scott, he had been struck by Scott with his fist, called a d— liar, and beat over the head with an oak board, all of which Scott seeks to justify and put Wood out of the pale of the law's protection by showing that Wood had spoken words that he construed insulting, the truth of which the court would not allow us to inquire into. The court thus gave defendant the laboring oar in .the case, and we think the charge ought to have been granted.

*The twelfth instruction* was correct and its refusal error. The charge of assault and battery with intend to murder differs from murder only in the fact that death does not ensue, and the facts to support a conviction must be such that if death had ensued it would have been murder. The rules of evidence must then be the same in both cases, and the defendant was entitled to have it so told to the jury.

*The thirteenth charge* for defendant was an expression of a plain and simple legal proposition, and a right guaranteed to every man by the constitution, that every man on trial is entitled to be tried according to the forms and principles of law, and no views of expediency nor disregard of constitutional safeguards are to control or govern juries. After a long and complicated trial, where a defendant has availed himself of all his constitutional rights as to the steps in the case, he is entitled to have any prejudice which his tenacious reliance upon this " due course of law " might give rise to counteracted by this simple and correct announcement of the law. *Browning* v. *The State,* 30 Miss. 669.

*The fifteenth charge* is copied almost *in totidem verbis* from the statute and announces the rule of self-defense and justifiable homicide. While it is true that the charge is applicable to homicide it is nevertheless our statutory rule in reference to self-defense. As we have seen, the offense in question differs from murder only in the fact that death does not ensue. The rule is one relative to *intent,* and has no connection with *the results* flowing from such intent. If the principle announced be true of the greater it is,

*a fortiori*, true of the lesser.     The rule as to intent is identical in the two cases, and we see no error in the charge.     Wharton's Am. Cr. L., § 1281.

*The twenty-second charge* is one so well approved by this and other courts that it is hardly necessary to cite authorities to sustain it.     If the court thought it inapplicable to the facts in evidence we reply that defendant is entitled to charges based on his theory of the case and applicable to the evidence in support of that theory. We rather think the court was misled by the case of *Long* v. *State*, 52 Miss. 38, where a charge apparently resembling this was held inappropriate to the facts in evidence.     It is true that in Long's case defendant relied on self-defense, as does Wood in this case, but the charge refused in that case was not similar to this one. That announced the doctrine that a man need not always await the attack of his adversary.     It was not appropriate because the defendant's own theory was that he had been assaulted and deceased was advancing upon him in a threatening manner, and the doctrine that a man need not await an attack had, of course, no application. This charge is totally different in meaning and scope.     It presumes an assault, and simply gives to the assaulted person whatever advantage he has in position, strength, or weapons, available for his necessary self-defense.     *Fortinberry* v. *State*, 55 Miss. 409.

*The twenty-third charge* was applicable to the facts proven by defendant, and it was error to refuse it.

3. The granting of new charges after argument begins, and especially as was done in this case, is wrong in principle.     It is wrong in theory and wrong in practice, and such a practice for a thousand years will never make it lawful where the right of trial by jury is held sacred by the people and her high court judges. The granting of new charges after argument has progressed is a fruitful source of injustice, interferes with the proper conduction of the case before the jury, and seriously impairs the due and proper administration of justice.

4. The indictment charges the name of the party alleged to have been cut to be Socratus Scott.     The proof shows his real name to be MARION SOCRATUS SCOTT.

This is a clear variance. Variance is a doctrine with which this court is so familiar it would seem to be useless to cite authorities. We admit that this variance as to the Christian name of Scott, between the statement in the indictment and the evidence on the trial, could have been amended under §§ 3081 and 3082 of the Code of 1880 had the court considered such variance not material to the merits of the case. This was not done; there was no application, no effort made to amend. Thus this question is left to be decided as it stood originally at common law.

In *Haywood* v. *The State*, 47 Miss. 3, certain stolen property was alleged to have been the property of James Marshall; the proof showed it to have been the property of James Cicero Marshall. It was thought proper to make the amendment, which was made accordingly.

In *Murrah* v. *The State* the indictment charged that the property marked belonged to John Barton. On trial the proof showed that it was the property of John Thomas Barton. It was considered proper to make an amendment in the indictment, so that the allegations and the proof would correspond. 51 Miss. 675.

We submit if it was important to make amendments where the proof showed a variance as to the MIDDLE NAME, how much more important is it when the proof shows a variance as to the Christian or first name.

Wharton lays it down as a rule that a variance in the name of the person aggrieved *is much more serious than a mistake in the name or addition of the defendant,* which variance will be a ground for arresting the judgment when the error appears on the record, or for acquittal when a variance arises ON THE TRIAL. 1 Wharton Criminal Law, § 256.

5. The court, in fairness, should, of its own motion, and under our request, have stopped the district attorney, and told the jury there was nothing before them as to the marking of the hogs which they should consider one way or another, and if there was any testimony on that point it was improperly admitted, and was then and there ruled out, and not to be considered by the jury.

Again, the district attorney sits by and asks additional charges

while the case is being argued ; sits there while the argument is progressing, and asks new charges merely to answer some position taken by counsel, as the court can very well see that they were so intended—" simply this and nothing more."

The court says such is the practice. Such is not the law, and the judge has not yet been on the bench long enough to make law by simple practice.

6. The greatest wrong, perhaps, done to the prisoner was while counsel for the defendant was making the closing argument to the jury.

In the argument of the sixteenth charge he was interrupted by the district attorney. The district attorney had to be stopped by the judge. Then the district attorney, after being stopped by the judge, then turns, and in the midst of the closing argument for the prisoner, *demands of the court, then and there, a modification of the sixteenth charge.*

*The judge stops the argument, asks for the charge, modifies it, and then passes it back to the prisoner's counsel for him to proceed in his argument.* Another victory, the crowd and the jury will say, for the district attorney.

Are such things to be allowed in a free country where a people still boast of a trial by jury ?

True, the judge states that this was done in the presence of the jury. Yes, it would have been far better for the defendant if the jury had been out of the sight and out of the hearing of the court.

True, the bill of exceptions states that this was done at the request of the district attorney. Yes, but is it the right of the district attorney to interrupt us in the midst of our argument ? Is it right for the judge thus to stop us and alter the charges ? granting, for the sake of argument, he had a right to do so, which, however, we do not admit, but most emphatically deny, and now here, in the court of last resort, most solemnly protest against such treatment.

*Wiley N. Nash* and *C. H. Alexander,* counsel for the appellant, each argued the case orally.

*J. R. Yerger, Jr.*, for the State.

1. The indictment is good. The intent with which the assault was committed constitutes the crime charged. The indictment is in accordance with approved precedents, and the motions to quash and arrest judgment were properly overruled.' See Wharton on Precedents of Indictments 242 ; 1 Archibald's Cr. Pl. & Pr., 8th ed., 929 ; MS. opinion of Supreme Court of Miss., Book J. 519, *Gilon* v. *State.*

2. The court very properly excluded the question asked Jo. Scott about the marking of the hogs. It was collateral testimony not objected to by the defense, and they had no right to cross-examine. Whether Scott did or did not mark the hogs has nothing to do with the case. The evidence shows that Wood *charged* him with it, and *this* was the commencement of the affray.

3. We now come to the instructions asked for the defense, the refusal of which is assigned for error.

*The first charge.* There was no error in refusing this instruction. It is in effect an abstract principle of law, not applicable to the facts disclosed on the trial, and its refusal in no wise prejudiced the defendant. It was properly refused. *Parker* v. *State*, 55 Miss. 414.

At any rate the principle stated in this instruction was already given in one asked by the State and cured for that reason. See *Scarver* v. *State*, 53 Miss. 407, where it is laid down that the omission (and it applies as well to the refusal) of a material principle of law is cured if the same principle be stated in another instruction.

The fourth instruction was properly refused, as being wholly inapplicable to the facts in the case. *Parker* v. *State*, 55 Miss. 414. From the evidence there is no doubt but that the words spoken by Wood, and not the blow with the fist by Scott, were the prime cause of the trouble.

The twelfth instruction was very properly refused. So was the thirteenth, and no prejudice was done the defendant. They could do no good for defendant, and simply confuse the jury.

The fifteenth instruction was properly refused, as inapplicable to

the case.   Likewise the twenty-second and twenty-third.   The evidence shows that at the time Wood cut Scott with the knife Scott was defending himself from an attack made on him by Wood's brother, and had all he could do to defend himself from him.

*T. M. Miller,* Attorney General, for the State, argued the case orally.

COOPER, C. J., delivered the opinion of the court.

The indictment charged that the appellant, on the 26th day of July, A. D. 1884, " in and upon one Socratus Scott, did unlawfully make an assault, and the said Wellington Wood, with a certain deadly weapon, to wit, a knife, did then and there strike, beat, cut, and wound the said Socratus Scott, with the intent him, the said Socratus Scott, then and there feloniously, willfully, and of his malice aforethought to kill and murder, etc."

Objection is now made that the indictment failed to charge that the appellant " feloniously " made the assault.   The objection *is* untenable.   Archbold's Crim. Pldg. and Prac. 929 ; Wharton's Precedents 242 ; *Gilon* v. *The State,* MS. opinion, Book J. 519 ; Bishop's Directions and Form 558.

It appears in evidence that the name of the injured party was Marion Socratus Scott, and that he was generally known and called by the name of " Crate " Scott, and it is contended that this was a fatal variance for which the conviction must be set aside.   It is too late to raise the objection.   If the point had been made in the court below it would have been competent for the court to have directed an amendment according to the name proved.   Code of 1880, § 3081.

The defendant not having interposed his objection in the court below, cannot now be heard to complain.   Code of 1880, § 1433.

The court should have excluded from the jury the evidence of the witness Joe Scott, that the hogs of the defendant had not been marked by the Scotts.   It was in reference to a matter collateral to the issue as tried before the jury, and should not have been lugged into the case.   We doubt not this would have been done

upon the application of the defendant. It is true that usually a defendant has the right to cross-examine a witness upon matters drawn out upon direct examination even though they be collateral in their character ; but we do not think a refusal to permit this to be done must necessarily operate to reverse the judgment. In the progress of trials much immaterial and irrelevant testimony falls from the lips of willing witnesses, and it is impossible to anticipate and avoid it. But it would extend the examination over too broad ground to make it fatal error to close the inquiry, where no harm can be done the defendant by so doing. If there was anything in this record, which indicated that the State had invoked against the appellant responsibility for all that occurred in the affray because he began the difficulty, a different question would be presented, since under such circumstances the denial of the right of cross-examination might have resulted in injury to the defendant. But there is nothing in the instructions for the State invoking that proposition, and the many instructions given for the defendant, clearly and without reservation, gave him the benefit of the rule of self-defense. He was tried and convicted for having stabbed his antagonist when in no real or apparent danger ; that he would have been justified in stabbing if at that time he was in danger, real or apparent, the jury was distinctly informed, and this being true it is wholly immaterial who was the aggressor in the commencement of the difficulty. If Scott began the fight and the appellant, when not in danger, stabbed him, he is guilty of either an assault and battery with intent to commit murder or manslaughter, both of which are included in the indictment preferred against him, and are punishable to the same extent. Code of 1880, § 2711.

The sole effect of a cross-examination of this witness would have been to palliate the fault of the appellant, if fault there was, in beginning the difficulty ; if he was blameless in that respect he was nevertheless guilty under the law if, as the jury has found, he cut his antagonist with a deadly weapon when not in danger, real or apparent.

Careful and repeated examinations of the instructions fail to dis-

cover any fault of which the appellant can complain.   There is a darkening of counsel with many words, but many of the instructions for the State are mere truisms, and none are erroneous.

The first instruction for the defendant was properly refused for the reason that by other instructions the right of self-defense had been fully recognized as existing under the law of the land; the court was not called upon to deduce it from a "law of nature."

The second instruction, which was refused, is almost an exact copy of the twenty-first, which was given.

The fourth instruction for defendant was properly refused; insulting words may be given in evidence in justification for an assault and battery.   Code of 1880, § 3080.

We do not understand what principle was intended to be announced by the twelfth instruction asked by defendant.   If it was for the purpose of invoking the rule of a reasonable doubt, it was properly refused because already given; if it intended to inform the jury that it must convict of the identical offense charged or acquit, it is incorrect as a proposition of law, since the defendant might have been convicted of an assault and battery or an assault.

The thirteenth instruction for defendant announced no rule of law properly applicable to any facts proved or attempted to be proved.

The fifteenth instruction was properly refused for the reason that it assumes the existence of evidence proving or tending to prove a killing by "accident or misfortune."   It would not be correct in any case where death resulted from the use of a deadly weapon.   Code of 1880, § 2879.

The twenty-second instruction was rightly refused because not applicable to any facts in evidence.

We would have preferred that the twenty-third instruction had been given, but, as we have said, the right of the defendant to defend himself has been so clearly charged in others given for him that we cannot perceive the injury that followed its refusal.

We find no fault with the action of the court in giving additional instructions for the State after the argument had proceeded.

If we understand the position of counsel for appellant it is this : that the court cannot obviate the effect of the argument of counsel for defendant by telling the jury what the law is upon the points pressed in argument. The reply is that if the counsel correctly state the law his argument will be supported by the law as given by the court; if it be incorrectly stated by him it is right that the jury should be told in this manner that the law is not as stated.

By the sixteenth instruction the defendant asked the court to charge the jury that, " no consideration of feeling or sympathy for the injured person or his family or relatives should control the jury, or weigh with them in determining from the evidence, whether the defendant was justifiable in inflicting the injury." While counsel for the accused was arguing this instruction to the jury, (and we doubt not pressing it for its full value), the district attorney converted it into a Grecian horse by inserting into its belly the suggestion, that the jury should be equally uninfluenced by sympathy for the defendant or his family or relatives. On his motion the court amended the instruction so that it read as follows : " No consideration of feeling or sympathy for the injured person or the defendant or family of either or relatives should control the jury, etc."

The danger of inviting the attack which followed this instruction must have suggested itself to counsel. The appellant cannot complain of the very obvious reply that was made.

We find nothing in the argument of the attorney for the State that necessitates a reversal of this judgment. Since the decision of this court in the case of *Martin* v. *The State*, 63 Miss. 505, in which the judgment was reversed because of the statement of a material fact, not proved, by counsel for the State in his argument, we have scarcely had an appeal in a criminal case in which it has not been urged that a reversal should be ordered, because of the unwarranted arguments used by the representatives of the State. In none of the subsequent cases have we found it proper to reverse on the ground indicated, but we must say that in many of them there has been a latitude permitted beyond the necessity of legitimate argument. We take this occasion of calling attention to the fact for the reason

that what was said in this case was, so far as it was improper, manifestly inadvertent and not intended to prejudice the accused, and our criticism of the practice will not be construed into a personal reflection on the officer.    The impression seems to prevail that district attorneys, because of their official character, are entitled to greater liberty in argument than is allowed to other counsel in other cases, and that the power of the court cannot be exercised to restrain them in their method of eliciting testimony or of presenting the case in argument.    This is a mistake; district attorneys have no more extended rights than have other counsel, and are as subject to restraint by the court as the humblest member of the bar.    No different rule in this respect should be applied to them than is applied generally.

*The judgment is affirmed.*