### HORN v. STATE.

(In Banc. April 3, 1933. Suggestion of Error Overruled April 17, 1933.)

[147 So. 310. No. 30551.]

170

W. H. Hughes, of Jackson, for appellant.

W. H. Hughes, of Jackson, and **J. D. Martin**, of Raleigh, for appellant.

Herbert Nunnery, Assistant Attorney-General, for the state.

**Smith, C. J.,** delivered the opinion of the court.

This is an appeal from a conviction of the larceny of a cow. The indictment described the cow simply as the "property of Walter Brown" and set forth that a more perfect description thereof was to the grand jurors unknown. The evidence discloses that the cow while owned by *Walker* Brown was sold, or agreed to be sold, by him to another, who made him a partial payment thereon and left the cow in his possession for delivery to the purchaser when the balance of the purchase price should be paid. The cow was in Brown's possession when stolen.

The appellant's complaints are: First, that there is a variance between the indictment and the proof in two particulars: (1) In the name of the owner of the cow, the indictment alleging that name to be *Walter* Brown

and the evidence disclosing that it was *Walker* Brown; and (2) in the ownership of the cow, the evidence disclosing that the cow was not owned by Brown, but by another.

The variance between the indictment and proof in the name of the owner of the cow was amendable at the trial, it being clear from the evidence that the identity of the offense charged would not have been thereby changed. Objections to variances of this character must be made before verdict and, if not, are waived. Consensus tollit errorem. Foster v. State, 52 Miss. 695; Unger v. State, 42 Miss. 649; Wood v. State, 64 Miss. 761, 2 So. 247; Smith v. State, 112 Miss. 248, 72 So. 929; Slade v. State (Miss.), 119 So. 355. Compare White v. State, 95 Miss. 75, 48 So. 611; Hudson v. State, 73 Miss. 784, 19 So. 965.

The appellant relies on Clark v. State, 100 Miss. 751, 57 So. 209, 38 L. R. A. (N. S.) 187, Ann. Cas. 1914A, 463, wherein the appellant was convicted of murder on an indictment charging him with the murder of Tobe Wallace. The evidence disclosed that the name of the person killed was Tobe Hollis. No objection thereto was interposed at the trial. The court held that, (1) the objection could be raised in the Supreme Court for the first time, and (2) that the variance, though curable by amendment, was fatal, and therefore reversed and remanded the case. This decision is in conflict with the construction theretofore put on the statute, is erroneous, and must be and is hereby overruled.

In Davis v. State, 150 Miss. 797, 117 So. 116, an amendment to cure a similar variance between the indictment and the proof was authorized by the court at the trial, but the statute providing how the amendment should be made was not complied with, for which reason the judgment of the court below was reversed and the cause remanded. That case is not in point here. The district attorney having attempted to amend the indictment to

conform to the proof, it was not necessary for the appellant to interpose an objection to the variance.

The cow was in Brown's possession either as owner or as security for the unpaid purchase price thereof. In either case its ownership for the purpose of this prosecution was properly alleged to be in Brown. 3 C. J. 832; 2 Bishop, Crim. Procedure (4 Ed.), section 72.

Affirmed.

**Ethridge, J.,** delivered a dissenting opinion.

As I understand the case, the majority of the court does not contend that the doctrine of idem sonans applies to "Walter Brown" and "Walker Brown." In other words, it is not contended that that doctrine would make the proof consistent with the indictment. The description of the ownership of the cow in Walter Brown is an essential element of the offense; it is the only thing the grand jury placed in the indictment by which the stolen cow could be identified at all. There was no other description known to the grand jury, and none was undertaken to be added by amendment in the indictment. The proof, therefore, must conform to the indictment as found by the grand jury. If the grand jury had otherwise described the stolen cow, so as to make the indictment point with certainty to the property stolen, and to its owner, an amendment could have been made.

In this record we have a case where a party was indicted for stealing property belonging to another, the proof showing that the property belonged to yet another person; and, consequently, that it did not belong to the party alleged to be the owner in the indictment. It is a clear case, therefore, of charging one offense, and proving another, and affirming such conviction.

Under section 26 of the Constitution one accused of a criminal offense must be informed by the indictment of the nature and cause of the accusation against him.

By section 27 of the Constitution, ''no person shall, for any indictable offense, be proceeded against criminally by information, except in cases arising in the land or naval forces, or the military when in actual service, or by leave of the court for misdemeanor in office; but the legislature, in cases not punishable by death or by imprisonment in the penitentiary, may dispense with the inquest of the grand jury, and may authorize prosecutions before justices of the peace, or such other inferior court or courts as may be established, and the proceedings in such cases shall be regulated by law.''

This case is a felony; therefore only the grand jury can furnish the charge against him. He was not convicted on evidence sustaining the charge laid in the indictment. The purpose of the indictment in making the accusation is twofold: First, that the defendant may have information to enable him to prepare his defense, and to prove the facts necessary to establish his innocence of the charge; second, that after trial on the merits, he may plead the judgment in bar of any further prosecution, whether it be a conviction or an acquittal. Murphy v. State, 24 Miss. 590, 1 Morris St. Cas. 618; Norris v. State, 33 Miss. 373, 2 Morris St. Cas. 1059.

The facts and circumstances which constitute the offense as charged must be stated with precision and certainty, and every material circumstance in regard to time and place must be averred with that degree of certainty sufficient to exclude every other indictment. Riggs v. State, 26 Miss. 51, 1 Morris St. Cas. 674.

The effect of the constitutional sections referred to above is that the grand jury alone prefers the charge, which must set out the elements of the offense, as they exist at common law if a common-law offense; and all the essential elements embraced in the statutory definition, if a statutory offense. This cannot be dispensed with by the Legislature. Whatever is necessary to constitute the offense under the law must be alleged in the

indictment, and the Legislature has no power to dispense with this requirement. Later in this opinion I will cite a case from the Supreme Court of the United States, dealing fully with the matter, which is unanswerable in reasoning and authority.

Indictment in a charge of larceny must allege the ownership of the property; that is an essential of the crime, and cannot be dispensed with. Hughes v. State, 74 Miss. 368, 20 So. 838; Unger v. State, 42 Miss. 642, 2 Morris St. Cas. 1584. At common law amendments to indictments cannot be made. It is for the grand jury alone to return indictments in felony cases. Moore v. State, 13 Smedes & M. 259, 1 Morris St. Cas. 464; McGuire v. State, 35 Miss. 366, 2 Morris St. Cas. 1097, 72 Am. Dec. 124. In Kline v. State, 44 Miss. 317, 2 Morris St. Cas. 1695, it was held that the court at a subsequent term, to which an indictment is found, has no right to allow an amendment which is material and substantial to charge an indictment of the defendant for Sunday traffic, having omitted to negative the exceptions in the statute; and that such indictment could not be amended at a subsequent term by inserting the negation in the indictment at such term.

In Ex parte Grossman, 267 U. S. 87, 45 S. Ct. 332, 333, 69 L. Ed. 527, 38 A. L. R. 131, the court held, in construing a constitutional provision, that the Constitution must be interpreted in the light of the common law. The court said: ''The language of the Constitution cannot be interpreted safely except by reference to the common law and to British institutions as they were when the instrument was framed and adopted. The statesmen and lawyers of the Convention who submitted it to the ratification of the Convention of the Thirteen States, were born and brought up in the atmosphere of the common law, and thought and spoke in its vocabulary. They were familiar with other forms of government, recent and ancient, and indicated in their discussions

earnest study and consideration of many of them, but when they came to put their conclusions into the form of fundamental law in a compact draft, they expressed them in terms of the common law, confident that they could be shortly and easily understood." Byrd v. State, 1 How. (Miss.) 163.

The Constitution should be construed so as to effectuate, and not defeat, the policy of its framers. Brien v. Williamson, 7 How. (Miss.) 14; Dantzler Lbr. Co. v. State, 97 Miss. 355, 53 So. 1.

I have shown by our decisions that it is necessary in larceny cases to allege the ownership of the property stolen, and this is a vital element of the offense and consequently not amendable under our statutes. In 36 C. J. p. 756, section 74, it is said: "The second essential of larceny is that the thing taken and carried away should be the property of another, that is, some one other than the taker must have in the thing taken a general or special property right which is invaded by the trespass committed in the taking."

In 36 C. J. at page 813, section 268, it is said: "When it is possible to do so the indictment or information must describe the property charged to have been stolen with sufficient particularity to enable the court to determine that such property is the subject of larceny; to advise accused with reasonable certainty of the accusation he will be called upon to meet at the trial; and to enable him to plead the judgment rendered thereat in bar of a subsequent prosecution for the same offense, without other proof. The description should be in the indictment, information or complaint, and not merely by reference to a schedule annexed."

In section 269 of the same book and page it is said: "The character of the thing to which the charge relates must be set forth in the indictment with definiteness and certainty. It is not sufficient to describe the thing stolen merely as 'a parcel,' or as a 'case of merchandise,'

or as a 'a certain lot of furniture,' or as 'certain paper,' or as 'certain tools,' or as 'certain property of the United States' furnished for the military service.''

It is plainly seen from these authorities that the description of the ownership of the property is a matter of substance, and not a matter of form.

Section 1205 of the Code provides that: ''An indictment or information shall not be abated by reason of any misnomer or dilatory plea; but in such case the court shall forthwith cause the same to be amended according to the proof, and proceed as though such plea had not been pleaded; and an indictment shall not be held insufficient for want of, or imperfection in, the addition of any defendant.''

It is plain that this has no reference to the essential elements of the crime. Whenever the matter is a matter not of substance, but a matter of mere form, the indictment may be amended; but if the matter charged is necessary to describe the offense it cannot be supplied by amendment. The grand jury must return the indictment, and after it does so, the court cannot change the indictment in any essential particular. By section 1206 the court is authorized to amend an indictment for any formal defect; but it does not, and cannot, authorize it to be amended in a substantial particular. To do so would be to make nugatory the provision of the Constitution. There has been much confusion in the decisions of this state upon this subject; but if we use the searchlight of common sense to penetrate the fog of technicalities which surrounds it, we will see that the essence of the section of the Constitution above set out is that the grand jury must do the indicting. It alone must prefer the charge where it is a felony. When it returns an indictment charging specificially the ownership of property stolen in a larceny case, it is not permissible for the court or the Legislature to undermine the Constitution, and authorize the prosecuting

officer or district attorney or judge of the court to substitute another charge, or another element essential to a charge. If the court and the district attorney can substitute one offense for another returned by the grand jury, the defendant might be placed in the attitude of coming into court prepared to meet and answer the charge preferred against him by the grand jury, but by the addition of amendments the court and district attorney would place him on trial for a different offense, which he might be wholly unprepared to meet.

The United States Supreme Court, which is the highest authority on constitutional law, and which has better protected individual rights under the Constitution than any other court in the country, has dealt with this subject in a learned and comprehensive opinion in Re Bain, 121 U. S. 1, 7 S. Ct. 781, 30 L. Ed. 849. At pages 784 of 7 S. Ct., 121 U. S. 1, the United States Supreme Court, speaking through the great constitutional lawyer, Judge Miller, said: "The proposition, that in the courts of the United States any part of the body of an indictment can be amended after it has been found and presented by a grand jury, either by order of the court or on the request of the prosecuting attorney, without being resubmitted to them for their approval, is one requiring serious consideration. Whatever judicial precedents there may have been for such action in other courts, we are at once confronted with the fifth of those articles of amendment, adopted early after the constitution itself was formed, and which were manifestly intended mainly for the security of personal rights. This article begins its enumeration of these rights by declaring that 'no person shall be held to answer for a capital, or otherwise infamous, crime, unless on a presentment or indictment of a grand jury,' except in a class of cases of which this is not one. We are thus not left to the requirements of the common law in regard to the necessity of a grand jury or a trial jury, but there is the positive and restric-

tive language of the great fundamental instrument by which the national government is organized, that 'no person shall be held to answer' for such a crime, 'unless on a presentment or indictment of a grand jury.' But even at common law it is beyond question that in the English courts indictments could not be amended. The authorities upon this subject are numerous and unambiguous. In the great case of Rex v. Wilkes, 4 Burrow, 2527, tried in 1770, which attracted an immense deal of public attention, Wilkes, after being convicted by a jury of having printed and caused to be published a seditious and scandalous libel, was brought up before the court of king's bench, on a motion to set aside the verdict, on the ground that an amendment had been made in the language of the information on which he was tried. In the course of an opinion delivered by Lord Mansfield overruling the motion, he remarks, on this subject (page 2569) that 'there is a great difference between amending indictments and amending informations. Indictments are found upon the oaths of a jury, and ought only to be amended by themselves; but informations are as declarations in the king's suit. An officer of the crown has the right of framing them originally; he may, with leave, amend in like manner as any plaintiff may do.' Mr. Justice Yates, on the same occasion, said that indictments, being upon oath, cannot be amended.''

Further discussing the question of the power of the grand jury and the court's power to amend, the court said, on page 786 of 7 S. Ct., 121 U. S. 1:

''The importance of the part played by the grand jury in England cannot be better illustrated than by the language of Justice Field, in a charge to a grand jury, reported in 2 Sawy. 667 [Fed. Cas. No. 18,255.] 'The institution of the grand jury,' he says, 'is of very ancient origin in the history of England—it goes back many centuries. For a long period its powers were not clearly defined; and it would seem from the accounts of commen-

tators on the laws of that country, that it was at first a body which not only accused, but which also tried, public offenders. However this may have been in its origin, it was at the time of the settlement of this country an informing and accusing tribunal only, without whose previous action no person charged with a felony could, except in certain special cases, be put upon his trial. And in the struggles which at times arose in England between the powers of the king and the rights of the subject, it often stood as a barrier against persecution in his name; until, at length, it came to be regarded as an institution by which the subject was rendered secure against oppression from unfounded prosecutions of the crown. In this country, from the popular character of our institutions, there has seldom been any contest between the government and the citizen which required the existence of grand jury as a protection against oppressive action of the government. Yet the institution was adopted in this country, and is continued from considerations similar to those which give to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government, or be prompted by partisan passion or private enmity. No person shall be required, according to the fundamental law of the country, except in the cases mentioned, to answer for any of the higher crimes unless this body, consisting of not less than sixteen nor more than twenty-three good and lawful men, selected from the body of the district, shall declare, upon careful deliberation, under the solemnity of an oath, that there is a good reason for his accusation and trial.' . . .

"It has been said that, since there is no danger to the citizen from the oppressions of a monarch, or of any form of executive power, there is no longer need of a

grand jury. But, whatever force may be given to this argument, it remains true that the grand jury is as valuable as ever in securing, in the language of Chief Justice Shaw, in the case of Jones v. Robbins, 8 Gray (Mass.) 329, 'individual citizens from an open and public accusation of crime and from the trouble, expense, and anxiety of a public trial before a probable cause is established by the presentment and indictment of such a jury; and in case of high offenses it is justly regarded as one of the securities to the innocent against hasty, malicious, and oppressive public prosecutions.'

"It is never to be forgotten that in the construction of the language of the constitution here relied on, as, indeed, in all other instances where construction becomes necessary, we are to place ourselves as nearly as possible in the condition of the men who framed that instrument. Undoubtedly the framers of this article had for a long time been absorbed in considering the arbitrary encroachments of the crown on the liberty of the subject, and were imbued with the common-law estimate of the value of the grand jury as part of its system of criminal jurisprudence. They, therefore, must be understood to have used the language which they did in declaring that no person should be called to answer for any capital or otherwise infamous crime, except upon an indictment or presentment of a grand jury, in the full sense of its necessity and of its value. We are of the opinion that an indictment found by a grand jury was indispensable to the power of the court to try the petitioner for the crime with which he was charged. The sentence of the court was that he should be imprisoned in the penitentiary at Albany. The case of Ex parte Wilson, 114 U. S. 418, 5 S. Ct. 935 (29 L. Ed. 89), and the later one of Mackin v. United States, 117 U. S. 348, 6 S. Ct. 777 (29 L. Ed. 909), establish the proposition that this prosecution was for an infamous crime within the meaning of the constitutional provision.

"It only remains to consider whether this change in the indictment deprived the court of the power of proceeding to try the petitioner and sentence him to the imprisonment provided for in the statute. We have no difficulty in holding that the indictment on which he was tried was no indictment of a grand jury. The decisions which we have already referred to, as well as sound principle, require us to hold that after the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists. It is of no avail, under such circumstances, to say that the court still has jurisdiction of the person and of the crime, for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment."

It seems to me that our court, in none of the opinions referred to in the majority opinion, discuss the power of the Legislature to dispense with the elements or verbiage of an indictment. They seem to assume in most of the cases such legislative power, and to merely assert it, without citing any authority in any of the cases. There is no question of the right of the Legislature to provide for a more specific description in an indictment than that written by a grand jury, if the grand jury has put

184

sufficient data in the indictment to amplify. Nor is there any doubt in my mind about the power of the Legislature to shorten the prolix descriptive allegations of common-law indictments, so long as they leave an adequate description in the indictment, sufficient to identify the offense charged, to allow the accused to understand from the indictment precisely what he is charged with, and to enable him to know what proof to produce, and to enable him thereafter to plead the indictment and the judgment of the court in bar of further prosecution. But the essential thing in an indictment cannot be dispensed with. The requirement is that the offense shall be certainly described in the indictment, and from it alone the accused must be enabled to prepare for his defense to the indictment; and also to identify the offense, should he be subsequently tried for the same offense. In case there is a variance between the indictment and the proof, we have a statute that authorizes the circuit court to hold the accused to answer a proper indictment; that is, hold him to answer such charges as the proof shows to be true. But it does not authorize the court to resolve itself into a grand jury and amend the indictment to charge an offense which the grand jury has not charged. Section 1190 provides: ''Where a defendant is acquitted of a criminal charge upon trial on the ground of a variance between the indictment and proof, or upon exception to the form or substance of the indictment or record, he may be tried and convicted upon a subsequent indictment for the offense actually committed, nothwithstanding such acquittal; and it shall be the duty of the court to order the accused into the custody of the proper officer.''

An acquittal in such case is an acquittal of the offense charged, but not an acquittal of another offense.

I am, therefore, of the opinion that the judgment should be reversed, and the case of Clark v. State, 100 Miss. 751, 57 So. 209, 38 L. R. A. (N. S.) 187, Ann. Cas. 1914A, 463, should not be overruled.