## W. B. Walker, Administrator *v.* Mrs. Jane Saunders.

**Resulting Trust.**

    If a party purchases land and pays for same with his own money but has the deed made to a third party, without consideration, for the purpose of defrauding his creditors, no trust results to him and the court will leave him in the position in which he placed himself.[1]

**Evidence — Objection for the First Time in Supreme Court.**

    Objection will not be heard for the first time to evidence in the Supreme Court, although irrelevant to the issues made by the pleadings, as it would be proper to allow the pleadings amended if objection had been made in the lower court and it will be treated as part of the case made by the record in the Supreme Court.[2]

Appellant as administrator of the estate of Miss Mattie B. Moore filed his petition to sell certain real estate in the town of Aberdeen to which Miss Mattie B. Moore had title at her

---

[1]

A resulting trust can be raised only when the consideration was paid by one party and the conveyance was taken in the name of another; or where trust money has been used in the purchase of property. Walker *v.* Brungard, 13 S. & M. 723.

It will not be raised by an agreemnt merely to purchase for the benefit of another — the purchaser using his own means in the purchase and buying in his own name and being under no fiduciary relations which would prevent him from purchasing. Walker *v.* Brungard, 13 S. & M. 723.

Where land is purchased and paid for by one who takes the title in the name of another for whom he is under a legal or moral obligation to provide, or toward whom he stands *in loco parentis*, the purchase is presumed to be a settlement and not a trust for the purchaser; but this presumption may be rebutted by evidence. In this case a brother for his dependent sisters held to be a settlement. Higdon *v.* Higdon, 57 Miss. 264.

death, to pay debts of deceased. Appellee filed the bill in this case seeking to enjoin the sale and alleged that in 1880, L. B. Moore purchased the land and paid for it but had the title placed in the name of his sister Mattie B. Moore; that Mattie B. Moore died in 1882 and afterward her heirs-at-law conveyed it to said L. B. Moore who sold it to his wife who in turn sold it to appellee. The bill alleges that Miss Mattie B. Moore had only the legal title to said property and that it was held by her in trust for said L. B. Moore. The bill prayed for an injunction perpetually restraining appellant from selling same and for the cancellation of his claim as a cloud on complainant's title. Defendant answered denying that there was a trust in favor of L. B. Moore. L. B. Moore testified that he purchased the land in question and paid for it with his own money and had the deed made to his sister Mattie Moore; that no part of the purchase money was paid by her.

A conveyance made to hinder, delay, or defraud creditors is only void as to them; it is good as against the grantor and his heirs. Shaw *v.* Milsaps, 50 Miss. 380.

A conveyance cannot be vacated at the instance of the grantor upon the mere ground that it was made without consideration. Though voluntary, it is binding upon him. Day *v.* Davis, 64 Miss. 253.

Conveyances though fraudulent as to creditors are good as between the parties, and will not be canceled at the suit of the grantor; nor will equity decree specific performance of an executory agreement by a fraudulent grantee to reconvey property to the debtor. *Ex turpi causa non actio oritur.* Walton *v.* Tustin, 49 Miss. 569.

Where one indebted beyond his ability to pay purchases land with his own means, and causes the title to be placed in another, the law conclusively presumes a purpose on his part to defraud creditors. The intention being unlawful, no trust arises in his favor. Simmons *v.* Ingram, 60 Miss. 886.

2

This court will not entertain questions not raised below. Anderson *v.* Leland, 48 Miss. 253; Griswold *v.* Simmons, 50 Miss. 137.

Objections to testimony made for the first time in a motion for a new trial will not be noticed here. Cook *v.* Ligon, 54 Miss. 368.

Objection to the introduction of secondary evidence to prove a written contract must be specifically made when the evidence is offered; otherwise this court will not notice the objection. Ketchum *v.* Brennan, 53 Miss. 596.

This court will not sustain the exclusion of evidence upon grounds not shown to have been made in the court below, unless the evidence be inadmissible under any circumstances. Decell *v.* Lewenthal, 57 Miss. 331.

A party will be held to the precise ground of objection made to a deposition below. Icis Co. *v.* Green, 52 Miss. 332; Love *v.* Stone, 56 Miss. 449.

James Moore testified that he knew that L. B. Moore purchased the land with his own money from H. Murphy, that Miss Mattie Moore was the sister of L. B. Moore and was living with him at the time the land was bought, and that she had no money to buy land with and no means of getting any, and that she was supported by L. B. Moore. On cross-examination he said he thought there were some judgments against L. B. Moore at that time.

For defendant several judgments against L. B. Moore were introduced which were unsatisfied at the time the sale was made. No objection was made to the introduction of these judgments. H. Murphy testified that L. B. Moore bought the land from him in 1880, and on the way home, L. B. Moore said to him " make the deed to my sister Mattie Moore," and knowing that there were some judgments against him and presuming he wanted to avoid being annoyed by these creditors I told him he need not do that as he was the head of a family and it would be exempt

Where objection to evidence is, in its nature, such as may be obviated, it must be specific, so as to allow opportunity to supply its place; otherwise, the objection will not be noticed in this court. Heard v. State, 59 Miss. 545; Ex parte Phillips, 57 Miss. 357.

If no objection be made to the admission of evidence when it is introduced, objections to it are considered as waived. Skinner v. Collier, 4 How. 396.

It will be too late to raise the objection on a motion for a new trial. Union Bank v. Graves, 12 S. & M. 130.

Objections to the introduction of evidence, which, from their nature, may be obviated by the party offering it, must be distinctly stated on the trial, otherwise they will not be noticed. Morris v. Henderson, 37 Miss. 492; Wesling v. Noonan, 31 Miss. 599.

As a general rule, questions cannot be raised in the high court which were not raised in the court below. To originate and decide questions here would be to assume original jurisdiction. The office of this court is to revise the action of the court below, and not to originate new questions here, not acted on there. Doe v. Natchez Ins. Co., 8 S. & M. 197; Commercial Bank of Manchester v. Martin, 9 S. & M. 613.

An objection to the competency of evidence not raised in the court below will not be noticed here. Neely v. Planters' Bank, 4 S. & M. 113.

The high court will not notice any objection to evidence, not raised in the court below. Chew v. Read, 11 S. & M. 182.

Objections to the admission of evidence should specifically point out the ground on which they are based, so that if capable of being removed by other proof it may be introduced. Doe v. Natchez Ins. Co., 8 S. & M. 197; Routh v. Agricultural Bank, 12 S. & M. 161; Morris v. Henderson, 37 Miss. 492; Monk v. Horne, 38 Miss. 101.

to him, and he replied that that was not his object but that he had spent her part of her mother's estate and he desired by this deed to repay her; that at the time the sale was made L. B. Moore was insolvent and there were judgments against him and one or more in which executions were returned "no property found."

From a final decree perpetually enjoining the defendant Walker, administrator, from further prosecuting his suit for the sale of the land and adjudging the legal and equitable title to be in complainant, this appeal is taken by the defendant.

APPEALED from Chancery Court, Monroe county, L. HAUGH-TON, Chancellor.

Reversed and remanded, May 11, 1885.

*Attorneys for appellant, Murphy & Walker, and Calhoun & Green.*

*Attorneys for appellee, A. H. Whitfield and G. C. Paine.*

Brief of Murphy & Walker:

\* \* \* \* \* \* \* \* \* \* \* \*

The facts show a want of "manifest intention of the parties at the time of the transaction to create the trust relation," and, therefore, no such relation exists. 4 Kent Com. 305; 2 Story Eq. 438; Perry on Trusts, § 147; Capers v. McCaa, 41 Miss. 487; 2 Pom. Eq., §§ 1031, 1040; Adams, Eq., 33, 34.

\* \* \* \* \* \* \* \* \* \* \* \*

The facts in this case are stronger against the idea of a resulting trust than those of another case which justified this court in deciding against the attempted resulting trust. Higdon v. Higdon, 57 Miss. 264; Hill on Trustees, 97; Dyer v. Dyer, 2 Cox, 92; Ebrand v. Dancer, 2 Ch. Cas. 26; Loyd v. Read, 1 P. Wms. 607; Benbow v. Townsend, 1 M. & R. 506; Perry on Trusts, 143; 2 Pom. Eq., § 1039, note 1, § 1041; Forest v. Forest, 11 Jun. (N. S.) 317; Sayre v. Hughes, L. R., 5 Eq. 376, 380; Smith v. Patton, 12 W. Va 541.

\* \* \* \* \* \* \* \* \* \* \* \*

On the strength of the ownership of this property with the

title thereto spread upon the public records, Miss Moore contracted· debts and incurred obligations which the *post mortem* claim of L. B. Moore ·cannot deprive of their lien.   Coleman *v.* Semmes, 56 Miss. 329; Perry on Trusts, § 142.

Moore was insolvent at the time of this transaction, and a conveyance of the kind alleged would have been a fraud upon his creditors.   He could not reserve to himself a secret benefit. Trimble *v.* Doty, 16 Ohio St. 118; Robinson *v.* Robinson, 17 Ohio St. 480; Perry on Trusts, § 142; Bump on Fraud Conveyances, 325, note 2 (3d ed.).

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

Brief of Calhoun & Green:

\* \* \*   The bill in this case does not proceed on the ground of a *resulting* trust.

It proceeds only on the ground of an *express oral* trust.   It avers that L. B. Moore paid the money and directed the deed to be made " to Mattie B. Moore, *that the legal title thereto might be held in trust* by said Mattie B. Moore *for the sole use* of him, the said Lucien B. Moore."

It then proceeds to aver " that the said deed made to her, the said Mattie B. Moore, as aforesaid, was accepted by her, *with the understanding* that she derived no beneficial interest in said lands, but that she was simply the holder of the legal title thereto *for the benefit of the real* owner, the said Lucien B. Moore," and there is nothing said of any other than this *express* verbal trust.

Here then was an express oral agreement between L. B. Moore and his sister that he should buy the land, pay for it, have the title vested in her, and that she should hold it in trust for him, and it is this agreement or " understanding " which the bill seeks to enforce.

This may not be done.   It is a declaration of trust not in writing and is void.   Code, § 1296.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

Brief of George C. Paine:

\* \* \*   L. B. Moore testifies emphatically that he paid for the property with his own money, and had the title made to Mattie B. Moore in trust, clearly negativing any idea of an advancement or gift.   48 Miss. 95; Perry on Trusts, §§ 124-127; Story, Eq. Jur., § 1195; Pomeroy, Eq., §§ 1037, 1038.

The doctrine announced in 48 Miss. 95, *ubi supra,* is a recog-nized doctrine of equity jurisprudence in this State; it was first announced in 1 How. 358, and has been enforced and adhered to down to the latest utterances of this court. 59 Miss. 148.

\* \* \* The fact that L. B. Moore was the brother of Mattie *will not defeat the trust.* Perry on Trusts, § 144, bottom p. 159.

He must be under some legal or moral obligation to provide for the beneficiary, or stand *in loco parentis.* Perry on Trusts, § 114, p. 160; 57 Miss. 264.

And even then, this obligation and attitude may be rebutted by evidence. 57 Miss. 264.

L. B. Moore had not placed himself *in loco parentis* to Mattie B. Moore, nor did he occupy that attitude to her. Jas. Moore, in explanation to his answer to interrogators, states that whatever landed estate Mattie had he looked after and managed it. \* \* \*

The facts in the case of Higdon *v.* Higdon, 57 Miss. 264, are not analogous to those under consideration. In Higdon *v.* Higdon, the appellant was the only brother, and had purchased at sheriff's sale the old homestead, where appellees had resided from infancy, and was at the time of the purchase " well off." At the time of the purchase he resided in Tennessee. Years afterward, meeting with reverses in fortune, he returned to the old homestead. His aunt, for an express valuable consideration, conveyed her interest in the estate to appellant.

In the case under consideration, the property had never been in the family. L. B. Moore was less able, physically and pecuniarily, of any of the brothers, to provide for Mattie. James, one of her brothers, was the manager of her landed interest. \* \* \*

Brief of A. H. Whitfield:

\* \* \* The question is purely one of intent on the part of L. B. Moore, and that intent is to be gathered from all the acts, declarations, and circumstances surrounding the transaction. L. B. Moore was not, as in Higdon *v.* Higdon, the only brother; not the best off financially of the three; he had nothing at all except this property; he had another unmarried sister, Rebecca, just as near to him as Mattie; he had married, or was about to marry; and yet the preposterous proposition is urged that thus situated himself, and with two brothers better able than himself to support the two unmarried sisters, with one of whom, Jas. Moore, they lived as

much as with L. B. Moore, and with Jas. Moore, executor of his father's will and manager of her own estate — L. B. Moore meant (a) to deprive his own wife of a home; (b) to give everything he had to one of two unmarried sisters, both equally dear to him, and equally dependent; (c) and this too, when it was more binding morally and legally upon Jas. and Stephen than upon himself to support Mattie. It is not to be presumed that under these circumstances, one of the brothers, by allowing two sisters to spend part of their time with him, is to be placed, *in invitum, in loco parentis* to one of them, with the liability which that relation carries; bound as a father would be, permanently; and that too, against his own solemn oath. * * *

And it has been expressly adjudged, that even when it is conceded one stands *in loco parentis,* it will not be an advancement, where the relative is a brother. 1 Perry on Trusts, § 144.

Adams in his Equity, p. 34, note, lays special stress on the nearness of the blood tie; and L. C. Baron Eyre, calls the fact of a deed being made of even father to son " a mere circumstance of evidence." It is the intent that governs. * * *

Indeed counsel for appellant themselves seem to be satisfied that they are without any standing on the evidence here, by attempting — not in the pleadings, in which case the charge would have been met and summarily repelled — but *arguendo* in this court *for the first time,* to show that L. B. Moore made the deed to defraud his creditors. But appellant will not be allowed to make such a point *here,* for the *first* time, in argument, when he has never given notice in the pleadings that this point would be made. It would be unjust to appellee, who stood ready, if it had been made, to overthrow the charge by the most conclusive evidence.

* * * The pleadings must set up the fraud if it is to be relied on. Bodine *v.* Edwards, 10 Paige (V. T.), 504; Elliott *v.* Horn, 44 Am. Dec. 488; Stewart *v.* Inglehart, 28 Am. Dec. 206, note; McLue *v.* Campbell, 32 Am. Dec. 783.

" If," says this court in 45 Miss. 564, in the case even of an outstanding judgment, " the defendant relied on an outstanding debt to overcome the complainant's equity, he ought by his answer to have given notice to the complainant that he took issue on that point, and thus have made it a subject on which his adversary should be prepared with evidence."

* * * * * * * * * * * *

If he had shown the fraud, clearly that would have made the property liable, not to Mattie's debts, but to L. B. Moore's creditors, and they are not represented here, if there are any. I quote the note, p. 170 of Adams' Eq. (3d Am. ed.). "And under *all* circumstances where the conveyance is in fraud of creditors, a sufficient interest remains in the parent to subject it in equity, to the claims of his creditors," citing many authorities. Now it certainly cannot be liable to the creditors of L. B. Moore and Mattie Moore also. * * *

OPINION.— CAMPBELL, J.:

The evidence introduced without objection on the hearing in the court below strongly suggests that the object of L. B. Moore in causing the title of the land he paid for to be conveyed to his sister was to defraud his creditors, and if this was his object, no trust resulted to him, because the courts will not interfere in behalf of one who has acted in violation of law. He will be left in the position in which he placed himself, and cannot have any aid to relieve him from the legal consequence of his own act. 1 Perry on Trusts, § 165.

It is urged that the evidence of unsatisfied judgments against Moore when he paid for the land, and directed it to be conveyed to his sister, was irrelevant to the issue made by the pleadings and should not be considered here. It is a part of the case as made by the record before us, and must have been so considered in the court below. It was received without objection, so far as the record shows.

Had objection been made, an amendment of the answer to meet the objection would have been proper.

Considering all the evidence in the case, we think it clear that no trust resulted to L. B. Moore by reason of his payment of the purchase money of the lot, and

We reverse the decree, but will not make a decree here; and remand the cause to the court below, where such further proceedings may be had as are proper in the opinion of the chancellor.