## JIM MILLER v. THE STATE.

1. CRIMINAL PROCEDURE. *Indictment for murder. Amendment.*
   If on a trial for murder the evidence discloses that the christian name of the deceased is erroneously written in the indictment, the court, upon motion of the district attorney, may order it amended by substituting the real christian name, and the trial should proceed, unless the amendment causes surprise and consequent prejudice to the defendant.

2. MURDER. *Evidence. Motive.*
   Where one accused of murder admits the killing, but claims that it was in self defense, the fact that during the eleven days intervening between the mysterious disappearance of the deceased and the finding of his body the accused cohabited with the wife of the deceased, and on four nights slept with her, may properly be given in evidence, as tending both to show a motive and to fix the guilt upon the accused.

3. SAME. *Evidence. Incriminating statements to accused not denied. Motive.*
   On such trial a state witness swore that the wife of deceased stated to the accused, in the presence of witnesses, that he, the accused, had killed her husband ; that he had told her he had killed him, and would kill her also, if she disclosed it ; that he loved her and would take care of her ; and that the accused replied that he would tell what he had to say at the magistrate's court. *Held*, such statements were competent as incriminating charges made in the presence of and directed to the defendant and not denied, and as tending to show a motive for the crime.

4. EVIDENCE. *Statements of accused before committing court ; when admissible. Parol testimony.*
   If the voluntary statement of the accused, made in the committing court, was not reduced to writing, the state, on the trial in the circuit court, may prove such statement by the parol testimony of those who heard it.

FROM the circuit court of Washington county.

HON. GEORGE WINSTON, Judge.

The appellant was indicted for the murder of one Bowman. During the examination of the first witness on behalf of the state, it developed that the true christian name of Bowman was Junius Bowman, whereas it appeared in the indictment as James Bowman. Thereupon the court, upon motion of the district attorney, and over the objection of the defendant, ordered the indictment to be amended by substituting the true christian name for that erro-

neously written in the indictment. The record does not disclose that there was any actual amendment noted on the face of the indictment. No special grounds of objection to this action of the court were urged by the defendant, but his exception was in general terms, and it does not appear that any application was made for a continuance of the cause on the ground of surprise to the defendant caused by such amendment.

The state's case against the defendant rested mainly on circumstantial evidence, coupled with certain admissions made by the defendant in the committing court, and evidence of certain incriminating remarks made by the defendant at the time of his arrest, which were not denied.

The accused and the deceased, both colored men, lived near to each other on the same plantation. It was shown that after the mysterious disappearance of Bowman, the appellant and the wife of Bowman began to cohabit as man and wife, and during the eleven days which elapsed before the finding of the body they stayed at a neighbor's house, and the state, over the objection of the defendant, was allowed to prove that they slept during these nights in the same bed. On the eleventh day after the disappearance of Bowman his body was found in a stream or bayou, immediately in front of the appellant's cabin, and the back of his head was crushed in, as if by an ax or other heavy instrument. Suspicion pointed to appellant, and he was arrested.

The circuit court permitted state's witness, West, to testify, over defendant's objection, that after the arrest, while the defendant was under guard, and in the presence of a crowd of persons, the wife of the deceased stated to the defendant, " You killed my husband, and told me you had killed him, and that if I told it you would kill me ; that you loved me and would take care of me."

One Sims, a witness for the state, was asked upon the trial if he had heard the defendant make any statement before the justice of the peace in the committing court, and if so what the defendant said on that occasion in reference to the charge against him. Counsel for the defendant objected to this question, because no proper foundation had been laid for the introduction of such evidence by

proof that the statement of the defendant had not been reduced to writing.   Thereupon the district attorney asked and obtained leave to introduce the justice of the peace, who testified that to the best of his recollection he did not reduce the statement of the defendant to writing; that he did recollect writing the judgment and mittimus, but not the statement.   Thereupon the state was allowed to prove that the defendant, when arraigned before the magistrate, admitted that he killed Bowman.   His version of the killing, as given by himself on that occasion, was that he had gone to the stream to put in a fish box, and that while engaged about this Bowman came up to him with an ax, and a quarrel ensued; that Bowman stuck his ax in the ground, or in a log, and pulled a knife from his pocket and started at him; that defendant thereupon seized the ax and knocked him into the stream.

The evidence offered in behalf of the defense disclosed that there had been a difficulty between Miller and Bowman, resulting in bad feeling between them.   The defense also gave in evidence certain threats made by Bowman that he would kill the appellant, which threats were communicated to the appellant.

This statement of the facts taken in connection with the opinion will be sufficient for an understanding of the points decided by the court.

The defendant was found guilty of murder, and his punishment fixed at imprisonment in the penitentiary for life.

*D. C. Wasson,* for appellant.

It was not sufficient to order the indictment to be amended.   The making of the order does not constitute the amendment, but the indictment itself must be changed by striking out such words as are ordered by the court to be stricken out.   Code 1880, 3081; *Miller v. The State,* 53 Miss. 404.   The amendment was improper.   *Ex parte Bain,* 7 U. S. Sup. Ct. Reporter, 871.

The evidence that the defendant and the wife of the deceased cohabited after the killing was not competent for any purpose, and only served to prejudice defendant's case.   It was not part of the *res gestæ* and could not serve to show motive.   Its only effect was

to cause the jury to infer that the defendant had killed the deceased in order to obtain his wife. It was equally incompetent to prove by parol evidence the statement of the defendant at the committal trial. There was no foundation laid for the introduction of secondary evidence. It is conceded that it devolved on the state to show that the statement of the defendant was not reduced to writing. I submit that the testimony of the justice of the peace does not sufficiently show this. He is uncertain about it.

The statements of Polly Bowman as detailed by the witness West are clearly hearsay, and should not be admitted. The majority of cases hold that defendants are not bound by statements made by others in their presence though not denied by them. But in this case the reply of the accused was equivalent to a denial. He replied that he would tell what he had to say at the magistrate's court, and he did make his explanation there, and it is not shown that this was false.

(Counsel discussed at length the evidence and also the instructions of the court, contending that the conviction was improper; but in view of the opinion it is deemed unnecessary to set out this argument.)

*T. M. Miller*, attorney-general, for the state.

The amendment of the indictment was proper. The charge against the defendant was not altered. *Miller* v. *The State*, 53 Miss. 403; *Garvin* v. *The State*, 52 Ib. 207.

The evidence that during the eleven days intervening between the disappearance of Bowman and the arrest of Miller, the latter lived with Bowman's wife and slept with her was of itself material to show motive in the accused to get the deceased out of his way. So also the testimony of West as to what was said by appellee Bowman to the appellant was admissible, because it was a charge of guilt calling for a denial. Taken with his failure to deny, it is both competent and very material.

The foundation was sufficiently laid for the introduction of parol testimony as to what the accused said before the justice of the peace. The latter swore that according to the best of his recollection he

wrote down nothing. This sufficiently proved that the statement was not reduced to writing.

Without discussing the instructions in detail, it appears that the case was fairly tried. There is no doubt about appellant's guilt, and the judgment should be affirmed.

WOODS, C. J., delivered the opinion of the court.

It is assigned for error that the court on the trial, and after one witness had been partially examined, permitted the counsel for the state, on motion, to amend the indictment, so as to conform to the undisputed fact proved, by substituting the true christian name of the deceased for that which had been erroneously inserted by the grand jury. The identity of the offense charged was not disturbed and the real charge preferred by the indictment was not changed; and that Junius Bowman was the person alleged to have been murdered by the accused, and was the person intended to be named by the grand jury, is clearly shown and is not denied. There was no surprise to defendant by this substitution of the true christian name of the deceased, nor can we see any reason for holding that the trial of the accused was at all prejudiced thereby. The amendment appears to have been proper, and is abundantly supported by precedent in this state. *Haywood* v. *State*, 47 Miss. ; *Murrah* v. *State*, 51 Ib. ; *Garvin* v. *State*, 52 Ib.

It is next insisted that the court below erred in permitting the witness, West, to testify to the statement made by Polly Bowman, the wife of the deceased, to the effect that the accused had killed her husband, and that the accused had told her he had killed her husband, and that he would kill her if she disclosed it; and that he loved her and would take care of her; to which the accused replied that he would tell what he had to say about it at the magistrate's court.

When we remember that the accused remained on the plantation where the homicide occurred from the date of the killing until the discovery by others of the dead body of Junius Bowman, eleven days afterwards, without ever saying a word on the subject of the homicide, or of Bowman's disappearance (except to the wife of the

deceased, as appears from her statement, as testified to by West);
that the accused took possession of the wife of deceased and openly
occupied, during four nights, the same bed with her; and that he
did, in the magistrate's court admit that he killed the deceased, it
would appear that the remarks made by the deceased man's wife
directly to the accused, and the reply of the accused, both as an
incriminatory charge made in the presence of, and addressed to the
accused and undenied by him, and as showing motive for the com-
mission of the crime by the accused, were properly admitted.

The third assignment of error goes to the action of the court in
admitting the evidence of the witness Turner showing that during
four of the eleven nights intervening between the killing and the
finding of the body of the deceased, the accused and Polly, the
wife of the deceased, slept in the same bed, and together, at wit-
ness's house. Clearly this was a pregnant circumstance, taken with
the other proofs, tending to show a motive for the crime on the part
of the accused, and, indeed, to fix the charge itself upon defendant.
Self-confessedly, the accused killed Bowman, and the fact that he
at once and notoriously appropriated the deceased's wife as his own
concubine appears to us to be a circumstance properly given in proof
to the jury.

The next ground relied upon for reversal is the ruling of the
court whereby the magistrate, Jones, and the witness, Sims, were
permitted to testify as to the statements made by defendant in the
committing court, in the absence of any written account of the
statement then taken down by the magistrate. The foundation for
the introduction of this oral testimony as to the statement of the
defendant had been laid, as we think, by the evidence of the magis-
trate, reasonably satisfying the court that the statement of defend-
ant was not, in fact, taken down in writing. The magistrate more
than once declared that his best recollection was that he did not
reduce to writing the statement made by defendant in his court;
that he remembered writing the judgment and the mittimus, but
that he had no recollection of writing down the defendant's state-
ment. We are of opinion that it was thus shown, with reasonable
certainty, that the statement was not written out, and, therefore,

that there was no error in the action of the court in admitting the evidence of the magistrate and the witness Sims showing what that statement was.

The 5th and 6th assignments of error go to the correctness of the instructions given and refused by the court, on both sides.    It is sufficient to say that the very few and plain instructions given for the state are unobjectionable, and that the nineteenth instruction given on behalf of defendant stated the case with great fulness, and quite as favorably for the accused as could have been asked.

The verdict of the jury was abundantly warranted, and we decline to disturb it.

*Affirmed.*