WILLIAM MATTHIS *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Evidence. Objections to. Supreme court practice.*

The supreme court, even in a murder case, will not consider an assignment of error predicated of the admission of evidence if no objection was made in the court below to its introduction.

2. SAME. *Confessions. Private party.*

Where the defendant, on the night of the commission of the crime for which he is indicted, went to the home of a friend for assistance in concealing evidences of guilt, awakened his friend from slumber, saying, "George, I am in trouble;" to which the friend replied, "I always do all I can for a friend," and thereupon the defendant recited the details of his crime, the confession so made is admissible in evidence.

3. SAME. *Instruction.*

The giving of an instruction in a criminal case informing the jury that "the defendant is presumed innocent until he is proved to be guilty, and his guilt must be established beyond a reasonable doubt by competent evidence," does not constitute reversible error because of the use of the words "competent evidence."

4. SAME. *Reasonable doubt. Want of evidence.*

An instruction on the subject of a reasonable doubt of guilt is not erroneous in failing to direct an acquittal for such doubt as might arise from a want of evidence, unless there be some failure of proof of which such a doubt could be predicated.

FROM the circuit court of Lafayette county.

HON. PERRIN H. LOWREY, Judge.

William Matthis, the appellant, was indicted, tried, and convicted of the murder of John A. Montgomery; was sentenced to be hung, and appealed from said judgment and sentence to the supreme court. The indictment upon which he was tried was a joint one against appellant, Orlandus Lester, Whittington Owens, and William Jackson. A severance was granted and the appellant, William Matthis, separately tried.

The facts out of which this case arose, as shown by the record, were substantially these: John A. Montgomery and his brother, Hugh Montgomery, were deputy United States marshals in and for the northern district of Mississippi. A warrant was placed in their hands for the arrest of the appellant, William Matthis, who was charged with the crime of illicit distilling, commonly called "moonshining." The officers went to the country residence of the appellant, reaching there late in the afternoon on the 16th day of November, 1901. They found the appellant engaged in some domestic business, and he claimed that it would be quite inconvenient for him to abandon it before its completion, which would require a short time only. He persuaded the officers to remain over night with him at his home, agreeing that he would go with them the next morning to Oxford and execute a bond for his appearance to answer the charge against him for which they sought his arrest. The officers yielded to his persuasion, and after they had gone to bed and were asleep the appellant, William Matthis, William Jackson, and Orlandus Lester entered their room and killed them with guns when they were lying in bed. After killing them, the bodies of the officers were removed to a point near the center

of the building, and appellant, Matthis, set fire to the house and burned it down, believing that thereby he could obliterate evidences of the crime. Some time during the night the appellant went to the house of his friend, George Jackson, who lived in the same country neighborhood, woke up Jackson, and said to him: "George, I am in trouble; can you do anything for me?" to which Jackson answered: "I always do all I can for a friend," and thereupon Matthis, the appellant, recited to Jackson the horrible details of the double murder. Jackson was ·put upon the stand as a witness by the state, and the district attorney sought to prove by him the confession which Matthis had made under the circumstances above stated. Objection was made to the introduction of this confession, but the court below overruled the objection, and Jackson testified, stating fully all the matters of fact which appellant had detailed to him. Two letters, claimed to have been written by Matthis, after he was arrested for the murders and while he was in jail, are mentioned in the record, but one of them only seems to have been read in evidence, the one addressed to Shell Vines, which details plans for defeating justice and inviting him to become a witness in appellant's behalf, suggesting what the witness should swear. The other is a letter addressed to · appellant's wife, about which witnesses were interrogated, but it was never offered in evidence. The instructions given by the court ·below are sufficiently stated in the opinion of the court.* ·

* Lester was convicted and sentenced to be hanged; he appealed to the supreme court, but the conviction was affirmed, the court delivering no written opinion. William Jackson was convicted and sent to the penitentiary for life. Owens was convicted for the murder of Jno. A. Montgomery and sentenced to the penitentiary for life, and he was convicted of the murder of Hugh Montgomery and sentenced to be hanged; he appealed from both judgments and both of them were reversed by the supreme court. See *Owens* v. *State, post,* p. 499 Matthis and Lester were hung at Oxford in the autumn of 1902.·. Owens, upon remand of his case, procured a change of venue from Lafayette to Marshall county; .was tried, in the cir:cuit court of the latter county in August, 1902, on one of the indictments and convicted, the jury fixing his punishment at imprisonment in the penitentiary for life, and his appeal from ·that conviction is pending in the supreme court at the time these pages go to press. He was .also convicted of the murder of a negro, who was a witness against the "moonshiners" in the circuit court of Lafayette county at the September term, 1902, and sentenced to be hanged, and his appeal therefrom is now pending in the supreme court.

*James G. McGowen,* for appellant.

The first point to which I direct attention is the confession detailed by witness, George Jackson, alleged to have been made to the witness by Matthis on the morning following the tragedy. Jackson was not a person of authority, but the record shows plainly that he obtained Matthis' statement on the inducement held out with great insistence that he (Jackson) would help Matthis out, and the record shows that Matthis was very reluctant to talk. This involuntary statement and confession is the strongest testimony against the prisoner. We understand that the authorities are in hopeless conflict as to whether such a statement should be permitted to go to the jury, and this court has almost held that confessions so made are competent in all cases. However, we submit, such decisions are wrong and should be overruled. I cite on this point 6 Am. & Eng. Enc. Law, 563, note 1; *Ib.,* 526. An offer of assistance to elude prosecution render incompetent confessions to private persons. *Anderson* v. *State,* 104 Ala., 83.

The court erred in admitting the letters offered in evidence by the state, because they did not throw any light on the crime, and if competent in any view, certainly they were not admissible in rebuttal. They are not competent because Matthis denied writing them, and there is absolutely no proof that he wrote them.

The third and last point we urge upon the court is the instruction, No. 4, asked by and given for the state. By this instruction the jury were limited on the question of reasonable doubt to the competent evidence in the case. Let us remember that Lester charges Matthis with the crime, and Matthis lays the crime upon Lester, and much is left unexplained. Where we are in the dark on so many material points, where no motive is shown for the killing by Matthis, the court should not have limited the jury to the evidence adduced, but should have told the jury that if they had a reasonable doubt, either

arising from the evidence or from a lack of evidence, they should acquit. We cannot understand why the state secured this instruction, as it has been so often condemned by this court; but another thing: the jury were inferentially called upon to pass upon the competency of the testimony, and no doubt in this case the jury were willing to assume this duty, which belonged to the court. In passing on this instruction in the case of *Knight* v. *State,* 74 Miss., 140 (quoting from Mr. Freeman's note to *Burt* v. *State,* 72 Miss., 408), this court said: "So it is error to limit a reasonable doubt to something which is suggested by or arises from or springs out of evidence adduced, as this gives too narrow a definition of reasonable doubt. Such a doubt may arise from a want of evidence as to some fact having a natural connection with the cause. It has reference to that uncertain condition of mind which may arise after considering what has not been proved, as well as what has. See also *Hale* v. *State,* 72 Miss., 150; *Herman* v. *State,* 75 Miss., 340, and authorities there cited.

*W. L. Easterling,* Assistant Attorney-General, for appellee.

Appellant assigns for error the action of the trial court in admitting the confession made by defendant to the witness, George Jackson, on the same night, but after the murder was committed, on the ground that it was not voluntary. This assignment is wholly untenable. The only pretense of inducement is that the witness, George Jackson, to whom defendant had gone as a confidential friend, when asked by defendant: "Can you do anything for me, or will you?" answered: "I will always do what I can for a friend." This witness was simply a private person and had no connection in any way with the prosecution of the case, and no one knew better than defendant the inability of witness to render him any service at all. This point is clearly decided against the defendant in this state in the case of *Jones* v. *State,* 58 Miss., 349, where it is held that the question of the voluntary character of the confession to any

person not in authority is a mixed question of law and fact to be determined by the court, from all the circumstances, whether or not the inducement offered was sufficient to overcome the mind of the prisoner. It is idle to contend that this confession was induced or affected in the slightest way by any such consideration. 6 Am. & Eng. Enc. Law (2d ed.), 548, and authorities cited.

The letter to Shell Vines, written by defendant while in jail, detailing his plans of defeating justice and setting out what his own testimony would be and what he wanted his friend, Vines, to swear ,was most relevant and was unmistakably identified, and therefore made perfectly competent. It was amply proved to have been written by defendant. It would almost have been impossible for any one else to have written it. He practically proves it himself by his own testimony, which is delivered in remarkable accordance therewith. The record does not show that the letter to defendant's wife, Cordie Matthis, was ever admitted in evidence.

The omission of the words "or the want of evidence" in instruction No. 4, for the state, is not error in this case. There is no want or lack of evidence in this case, no chasm is to be jumped to connect this defendant with the murder, about which the jury could have any possible doubt; and therefore the omission of these words could not have had any possible effect on the verdict. How different this from the case of *Knight* v. *State,* 74 Miss., 140, where the lack of evidence to connect defendant with the crime was the most prominent feature in the case to be considered by the jury, and this court reversed that case because the evidence was insufficient to support the verdict. In the case of *Hale* v. *State,* 72 Miss., 150, the court reversed on other grounds and simply add in the last sentence of the opinion that the instruction without these words was objectionable. There may be cases in which it would be material, but certainly not in this one. *Hemingway* v. *State,* 68 Miss., 371, was affirmed, with an instruction for the state to the effect that

"if the evidence raises no reasonable doubt of innocence, the jury should convict."

The state witness, Orlandus Lester, was especially corroborated in this case by four striking facts and circumstances which leave no doubt as to the correctness of the verdict:

1. The letter of the defendant to Shell Vines, attempting to suborn evidence to save him from the consequences of his guilt.

2. Defendant's own testimony in complete accordance with that set out in his letter to Vines.

3. Defendant's confession to George Jackson on the night of, but just after, the murders.

4. The place where the crime was committed and the motive as expressed to witness, Vines; and also his effort to get witness, Vines, to swear that he stayed at King Vine's house on the night of the murder. We therefore respectfully submit that there is no error in the record calling for a reversal, and the verdict of the jury is manifestly right and should be affirmed.

Argued orally by *J. G. McGowan,* for appellant, and by *W. L. Easterling,* Assistant Attorney-General, for appellee.

Calhoon, J., delivered the opinion of the court.

We decline the request to pass on objections to the admission of evidence not made below. We do not find that the letter complained of was ever read to the jury. If it was, the result would be the same in this case.

The confession made to George Jackson was clearly competent. He sought Jackson after the crime, on the very night it was committed; had him waked up to tell him his trouble, in order to get him to befriend him and conceal evidences of the murder; asked him if he could do anything for him, after saying: "George, I am in trouble," to which George answered: "I always do all I can for a friend." Thereupon he gave the horrible details of his deed. No case

in the books, known to us, warrants the exclusion of a confession made under such facts.

The objections to the fourth charge given for the state are of no avail. The charge reads as if asked by the defendant, and is this: "The defendant is presumed to be innocent until he is proved to be guilty, and his guilt must be established beyond a reasonable doubt by competent evidence; and if the jury have a reasonable doubt, arising from the evidence, as to the defendant's guilt, they should acquit." The apprehension that the words "by competent evidence" could possibly have affected the jury, to defendant's detriment, in a case like this, is overstrained. Nor is the objection that it is vicious because it does not have the words "or the want of evidence" after the words "reasonable doubt, arising from the evidence," of any more force in this case, where the testimony as to defendant's guilt is simply overwhelming. There is no question here that, if the jury believed beyond reasonable doubt the competent testimony, there was no ground for doubt from any lack of it, and it is only in cases where there is such ground that reversals will be ordered for the want of these words. *Herman* v. *State,* 75 Miss., 340; 22 South., 873.

*Affirmed.*