## JIM CLARK *v.* STATE.

[57 South. 209.]

1. CRIMINAL LAW. *Parol evidence. Record. Objections. Waiver. Code* 1906, *sections* 4936-1508.

    Parol evidence is not admissible to contradict the record of a court of record.

2. CRIMINAL LAW. *Code* 1906, *section* 4936.

    Where the indictment charged that accused killed Tobe Wallace and the evidence showed that the person killed was Tobe Hollis, there is a failure of proof and accused may raise the objection for the first time on appeal in the supreme court.

3. SAME.

    Section 4936, Code 1906, providing that no judgment shall be reversed because of any error or omission in the case in the court below, unless the record shows that the errors complained of were made the ground of special exception in such court, does not operate in any case so as to supply the proof necessary to show that the offense had been committed.

4. SAME.

    When a party is upon trial for his life, he stands at every stage of the trial objecting to all illegal proceedings; and it is only in instances specified by the statute that he waives those things which the statute makes him waive in the event he fails to object.

5. HOMICIDE. *Variance in name. Objections. Waiver. Code* 1906, *section* 1508.

    Where accused was indicted for the murder of one person and the evidence showed that he killed an entirely different person and there was no amendment of the indictment sought by the state to make it correspond with the evidence, a conviction could not be sustained on the theory that the trial court could have amended the indictment, as authorized by Code 1906, section 1508.

APPEAL from the circuit court of Leflore county. HON. P. C. CHAPMAN, Special Judge.

Jim Clark was convicted of murder and appeals.
The facts are fully stated in the opinion of the court.

*E. D. Stone,* for appellant.

*J. R. McDowell,* assistant attorney-general, for appellee.

McLEAN, J., delivered the opinion of the court.

The appellant was tried, convicted of murder, and sentenced to be hanged for the killing of one Tobe Wallace. The evidence in the record clearly and unequivocally, beyond question or cavil, shows that he killed Tobe Hollis. When the attention of the attorney general was called to the discrepancy between the indictment and the proof, a motion for a *certiorari* was made in, and sustained by, this court, and in pursuance thereof the original indictment and the original transcribed notes of the stenographer were sent up to this court; and the original indictment and the original transcribed notes of the stenographer show that the transcript in this court is correct. In other words, not only the transcript, but the original indictment and the original transcribed notes of the stenographer, show that appellant was indicted for the murder of Tobe Wallace, and that he killed Tobe Hollis.

There is not one single instruction, either for the state or defendant, which directly or indirectly refers to the deceased as Tobe Hollis; but, upon the other hand, the party killed, in each and every instruction is referred to as "the deceased." There is no effort made on the part of the state to show by any sort or kind of evidence that there is any error in the record to the effect that the name of the deceased was Tobe Wallace, instead of Tobe Hollis. Only record evidence would be admissible to show this, and there is no record evidence in existence; and, of course, parol evidence is clearly inadmissible to contradict the record. *Jones, Receiver,*

v. *Williams,* 62 Miss. 183. A motion in the lower court
for a new trial was made upon the ground that the ver-
dict was contrary to the law and the evidence, and such
is one of the assignments of error.

The sole and single question, therefore, is: Can this
court afford to permit this appellant to be punished in
the face of the record, which shows conclusively that
he is not guilty of the crime charged? It is insisted that,
notwithstanding the record shows that it was Tobe Hol-
lis who was killed, it must be assumed that there is
some mistake in the record; that surely, if upon the
trial in the court below the evidence showed that it was
Tobe Hollis, and not Tobe Wallace, who was killed, the
defendant would have objected to the evidence as to the
killing of Tobe Hollis; and, further, that if he failed to
object he waived his right, and that the objection can-
not be made for the first time in this court.

In answer we say that, when a person is upon trial
for his life, he stands at every stage of the trial object-
ing to all illegal proceedings; and it is only in instances
specified by the statute that he waives those things
which the statute makes him waive in the event he fails
to object. Section 4936 of the Code of 1906 is as fol-
lows: "A judgment in a criminal case shall not be re-
versed because the transcript of the record does not
show a proper organization of the court below or of
the grand jury, or where the court was held, or that
the prisoner was present in court during the trial of any
part of it, or that the court asked him if he had any-
thing to say why judgment should not be pronounced
against him upon the verdict, or because of any error or
omission in the case in the court below, except where
the errors or omissions are jurisdictional in their char-
acter, unless the record shows that the errors com-
plained of were made ground of special exception in
that court." This court, in *Bryant* v. *State,* 65 Miss.
435, 4 South. 343, says this: "The motion for a new

trial, alleging that the verdict was contrary to the law and the evidence, should have been sustained. Section 1433 (which is now section 4936), to the effect that no judgment shall be reversed because of any error or omission in the case in the court below, unless the record shows that the errors complained of were made the ground of special exception in such court, does not operate in any case, so as to supply the proof necessary to show that the offense charged had been committed." The failure of the state to make out its case was the neglect to show that the county, in which the offense was charged to have been committed, was operating under the local option law.

It seems to us to be just as necessary to prove that the party killed was the party alleged in the indictment to have been killed, as it was to show that the local option law was in force in the Bryant case. It will be a sad, sad day in the jurisprudence of any country when the courts will permit one of its citizens to be hung for the commission of a crime of which the record made by the state completely and fully acquits him of the charge. The standing aside from the beaten path of immemorial usage, worn hard and bare by the footsteps of our forefathers in the law, in order to make way for the passing of the funeral cortege, brought about by a too liberal construction of a criminal statute enacted in derogation of the common law, is the recognition and enforcement of too dangerous a doctrine to comport with the humane and beneficent conduct of a civilized court. To permit the conviction to stand in a case where the party is charged with killing one person, and where the record shows conclusively that he killed an entirely different person, is akin to the court joining in the mob and executing the party under the form, but without the authority, of law.

This court held in *Matthis* v. *State,* 80 Miss. 491, 32 South. 6, that it would decline to pass on objections to

evidence not made in the court below. There is a broad
distinction between a failure to object to competent tes-
timony, and where the record conclusively shows that
the accused is innocent of the crime charged against
him. In *Hunt* v. *State,* 61 Miss. 577, this court con-
strued the record in that case to mean that the appel-
lant was tried by a jury of eleven men. No objection
was made to this in the lower court, no exceptions what-
soever were taken to it, and the matter for the first
time noticed or observed when the case reached this
court. After a full consideration of the question, it
was the unanimous opinion of all the judges compos-
ing the court that the conviction was unlawful; the court
stating there cannot be a valid jury trial by less than
twelve men, and that a consent to that effect by a crimi-
nal is absolutely void. The court then proceeds to draw
a distinction between merely an omission to show that
there were twelve men on the jury, and where the record
affirmatively shows that there were eleven only. Sec-
tion 4936 passed under review by this court, and it was
held that there was nothing in that section which alters
the rule referred to and announced, and because the
record affirmatively showed that the accused was tried
by less than twelve men the case was reversed.

It may be urged that under section 1508 of the Code
the lower court had the right to cause the indictment in
this case to be amended, so as to charge the defendant
with having killed Tobe Hollis. Section 1508 is as fol-
lows: "Whenever, on the trial of an indictment for any
offense, there shall appear to be any variance between
the statement in the indictment and the evidence offered
in proof thereof . . . in the name or description of
any person or body politic or corporate, therein stated
or alleged to be injured or damaged, or intended to be
injured or damaged by the commission of such offense,
or in the Christian name or surname, or both, or other
description whatever of any person whomsoever, there-

in named or described, . . . it shall and may be lawful for the court before which the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense on the merits, to order such indictment and the record and proceedings in the court to be amended according to the proof, whenever it may be deemed necessary by the court to amend such indictment," etc. In *Miller* v. *State,* 53 Miss. 403, the defendant was indicted for an assault with a deadly weapon. The indictment alleged that the assault was made upon one Blackman. The evidence disclosed that the real name was Blackburn. The court ordered the indictment to be amended so as to correspond with the proof. This court held that it was not error for this amendment to be made. In *Wood* v. *State,* 64 Miss. 761, 2 South. 247, the indictment charged that the defendant made an assault upon one Socratus Scott. It appeared in evidence that the name of the injured party was Marion Socratus Scott, and that he was generally known and called by the name of Crate Scott. In this court an objection was made for the first time that there was a fatal variance between the allegation in the indictment and the evidence, as to the name of the party. This court held that there was no such fatal variance. In *Miller* v. *State,* 68 Miss. 221, 8 South. 273, the defendant was indicted for the murder of one James Bowman. The evidence showed that the true name was Junius Bowman. The lower court permitted the indictment to be amended so as to correspond with the proof, and this court held that such was not error.

All of these cases present an entirely different question from the one which is now presented by this record. If the court in the trial of the case at bar had amended the indictment in the lower court before the jury had returned the verdict, the question would have been a very different one from what it is now. The

question now before the court is not whether an amendment to the indictment was competent,. so a's to make the allegations in the indictment correspond with the proof. Upon the other hand, the record as now before the court shows that appellant was indicted for the murder of one person, and the evidence shows that he killed an entirely different person. We are left to conjecture entirely what the defendant would have done, had the state attempted to correct the indictment by changing the name in the indictment from Tobe Wallace to Tobe Hollis.

The question which this record presents is not what may be termed a technicality in any sense of the term. It is a matter of substantive right. To permit a person to be hanged when the evidence shows that he was convicted for the murder of a person different from the one charged in the indictment is absolutely shocking in the extreme. Our conscience recoils with absolute horror from such a proposition.

Reversed and remanded, and a new trial granted.

SMITH, J. (dissenting).

Appellant was indicted for the murder of Tobe Wallace, but in the bill of exceptions the name of the deceased appears as Tobe Hollis, thus disclosing a variance between the allegation and proof of the name of the man alleged to have been murdered. No motion was made in the court below to exclude the evidence of the ground of variance, nor was any objection raising this question interposed in the court below at any time, either before or after verdict, and no such objection has been made here by counsel. This point was raised by this court *sua sponte*.

The fact is that appellant was tried and convicted for the murder of Tobe Wallace, and the statement of his name as being Tobe Hollis crept into the bill of exceptions by error in the making up of the same. It is man-

ifest from this record that all parties understood that the dead man, about whom the witnesses were testifying, was the man for the murder of whom appellant was on trial. Appellant himself testified as a witness in his own behalf, and in his direct examination the following questions and answers appear: "Q. Jim, they accuse you of killing Tobe Hollis. If you did it, how did you come to do it, Jim? A. It was through an accident; it was a mistake. Q. Now, if you killed that fellow, tell how you came to do it? A. We all had a crap game there Saturday night. Q. Did you mean to kill Tobe Hollis? A. No, sir; I did not. . . . Q. Had there been anything between you and Tobe Hollis at all? A. No, sir. J. On that night, or at any other time? A. No, sir. Q. Did you ever see Tobe Hollis before? A. Once or twice. Q. Where did Tobe Hollis live? A. On Mr. Henderson's, I think. . . . Q. State whether or not you had any ill will, malice, or bad feeling toward Tobe Hollis. A. Not a bit in the world. . . . Q. Which one did you shoot at? A. I wasn't after Tobe Hollins. I was after him, but I shot him. Q. Who did you shoot at? A. This fellow; me and him was in the dispute. Q. What is his name? A. I don't know, sir. Q. You knew Tobe Hollins better than you knew him? A. Yes, sir; I knew Tobe Hollins." (Note that the deceased's name is here give as Hollins.) In the original bill of exceptions, which consists of the stenographer's transcribed notes, the name of the deceased sometimes appears as Tobe Hollis in type, but most of the time it appears first to have been written Tobe Wallace with a typewriter, and then a line drawn through the name Wallace and Hollis written above it. It appears from an affidavit filed by the stenographer that his original notes show that the deceased was referred to throughout the evidence by the witnesses as Tobe Wallace, but that one of the attorneys in some of his questions referred to the deceased as Tobe Hollis, and that in transcribing his

notes he thought he had probably made a mistake in taking the name from the witnesses as Wallace, and consequently made the correction above set forth.

I have set out the foregoing facts simply to show the absurd result to which the error into which my brethren have fallen has led them; for, of course, we must be governed here by the bill of exceptions, and cannot go outside of it in order to ascertain what the evidence in the court below was. Conceding, then, that according to the record deceased's real name was Hollis, what occurred was simply a variance between the name of the deceased as alleged in the indictment and his name as shown by the evidence; and had a motion been made by the district attorney, even after the evidence was closed, to amend the indictment, so as to make the name of the deceased therein conform to the proof, this amendment must have been allowed under section 1508 of the Code. Had appellant called the attention of the court and of the district attorney to this variance by interposing an objection on that ground, this amendment would, of course, have been promptly made, and the defect cured. If the defendant desired to object to this variance, it was his duty to do this before verdict, so that the amendment to the indictment could be made; and, failing to do this, the universal rule, so far as I am aware. is that he waived this defect, and cannot thereafter take advantage of it. *"Consensus tollit errorem"* (the acquiescence of a party who might take advantage of an error obviates its effect) is one of the most elementary of the common-law maxims of procedure. 2 Hughes, Grounds and Rudiments of Law, p. 445; Broom's Legal Maxims (8th Ed.), 136. In explaining this maxim Mr. Broom says: "Where, however, an irregularity has been committed. and where the opposite party knows of the irregularity, it is a fixed rule, observed as well by courts of equity as of common law, that he should come in the first instance to avail himself of it, and not

allow the other party to proceed to incur expense. 'It
is not reasonable afterwards to allow the party to com-
plain of that irregularity, of which, if he had availed
himself in the first instance, all that expense would have
been rendered unnecessary.' And therefore, if a party,
after any such irregularity has taken place, consents to
a proceeding which, by insisting on the irregularity, he
might have prevented, he waives all exceptions to the
irregularity. This is a doctrine long established and
well known. *'Consensus tollit erroem'* is a maxim of
the common law, and the dictate of common sense.
. . . 'A man who does not speak when he ought shall
not be heard when he desires to speak.' '' *Stier* v. *Sur-
get,* 10 Smedes & M. 154; *Greer* v. *Bush,* 57 Miss. 575;
*Kimbrough* v. *Ragsdale,* 69 Miss. 674, 13 South. 830;
*Railroad* v. *Cathey,* 70 Miss. 332, 12 South. 253; *Rail-
road* v. *Pounder,* 82 Miss. 568, 35 South. 155; *Walker* v.
*Saunders,* 1 Miss. Dec. 50; *Railroad* v. *Price,* 72 Miss.
862, 18 South. 415; *Wood* v. *State,* 64 Miss. 761, 2 South.
247; *Unger* v. *State,* 42 Miss. 642; 22 Ency. Pl. & Pr.
629. "If, except where some counter doctrine presses
with a superior force forbidding, a party has requested
or consented to any step taken in the proceedings, or
if at the time for him to object thereto he did not, he
cannot afterward complain of it, however contrary it
was to his own constitutional, statutory, or common-
law rights." 1 Bishop's Crim. Procedure (4th Ed.),
sec. 118. In *Kimbrough* v. *Ragsdale,* 69 Miss. 677, the
court said: "The slightest reflection should have sug-
gested that in that way only (referring to an objection
before verdict) can advantage be taken of the variance
between the cause of action as stated in the pleadings
and that sought to be proved." In *Railroad* v. *Cathey,*
70 Miss. 338, 12 South. 254, it used this language: "There
was a fatal variance between the declaration and the
evidence in this case; but no objection was made on that
ground, and, as an amendment would have been allow-

able, so as to conform the pleading to the evidence, if this objection had been made, it must be held to have been waived, and cannot be made available here now."

My brethren have misunderstood the case of *Wood* v. *State, supra;* for they say that this court held in that case that there was no fatal variance between the indictment and the proof with reference to the person assaulted. What the court in fact did hold was that, although there may have been a variance between the indictment and the proof, the point, not having been made in the court below, could not be raised in the supreme court for the first time. The language of the court in that case was as follows: "The indictment charged that the appellant, on the 26th day of July, A. D. 1884, 'in and upon one Socratus Scott, did unlawfully make an assault,' etc. . . . It appears in evidence that the name of the injured party was Marion Socratus Scott, and that he was generally known and called by the name of 'Crate' Scott, and it is conceded that this was a fatal variance, for which the conviction must be set aside. It is too late to raise the objection. If the point had been made in the court below, it would have been competent for the court to have directed an amendment according to the name proved. Code 1880, sec. 3081. The defendant, not having interposed his objection in the court below, cannot now be heard to complain. Code 1880, sec. 1433."

In addition to the common-law rule as hereinbefore set forth, it has been expressly held that under section 1413 our criminal statute of jeofails, objections on account of variances, of the character here under consideration, must be made before verdict, and, if not so made, cannot thereafter be taken advantage of. *Unger* v. *State,* 42 Miss. 642; *Wood* v. *State,* 64 Miss. 761, 2 South. 247. But I will assume, for the sake of the argument, that the two cases just cited were erroneously decided and should be overruled, that variances between allegations and

proof are not included within the language of section 1413 of the Code, and that under section 4936 of the Code the objection may be made for the first time in the motion for a new trial. This section (4936) is as follows: "A judgment in a criminal case shall not be reversed .  .  . because of any error or omission in the case in the court below except where the errors or omissions are jurisdictional in their character, unless the record show that the errors complained of were made ground of special exception in that court." I presume that it will be admitted that, under this section, an objection of this character cannot be raised in the supreme court for the first time. The only hint which the motion for a new trial contains of an objection on this ground is the allegations that the verdict of the jury is contrary to the law and the evidence, and that the court erred in admitting evidence against the defendant. This language is entirely too vague and general to present the point to the court for consideration. The objection ought to have been specific, so that the court's attention below would have been directed to the precise point which the appellant desired it to consider. *Greer* v. *Bush,* 57 Miss. 575; *Alexander* v. *Flood,* 77 Miss. 927, 28 South. 787; *Richburger* v. *State,* 90 Miss. 806, 44 South. 772. "The general rule is that the grounds must be stated so specifically as to direct the attention of the court and opposing counsel to the precise errors complained of. A mere statement of the grounds, without further specifications, will therefore be insufficient. 'The purpose of the rule is to direct the attention of the trial court to the alleged erroneous ruling, and to present to the appellate court the precise question involved.' The safest course is to assign each error with the same particularity as in a petition in error or an assignment of errors on appeal." 14 Ency. Pl. & Pr. 882.

In *Alexander* v. *Flood, supra,* the language of the court is: "The office of a motion for a new trial also remains

the same as before, viz., to specify particular errors supposed to have been committed during the trial. Even in criminal cases, though capital, this court is forbidden to consider errors or omissions not assigned in the court below." The language of the statute is, "Made ground of special exception in the court below." The word "special," as defined by Webster, means: "Particular; peculiar; different from others; designed for a particular purpose, occasion, or person; limited in range; confined to a definite field of action." In *Darcey* v. *Lake,* 46 Miss. 117, a special demurrer was defined by the court to be one in which "the particular defects or objections are pointed out." It follows, therefore, that a special exception is one in which the particular matter or thing excepted to is pointed out. If a general exception had been contemplated, the word "special" would not have been used, and the statute would simply have read "made ground of exception in the court below."

The cases of *Miller* v. *State,* 53 Miss. 403, *Miller* v. *State,* 68 Miss. 221, 8 South. 273, and *Bryant* v. *State,* 65 Miss. 435, 4 South. 343, are not in point, for the reason that the matter here under consideration was not therein involved. In the last-named case no question of variance arose at all. The counsel for the state simply failed to introduce testimony showing that the county in which the offense was charged to have been committed was operating under local option law, and, since the court at that time could not take judicial notice of that fact, the matter stood as if the sale of liquor in the county was legal. This being true, the evidence wholly failed' to show the commission of any crime. Here the evidence shows abundantly the commission of the crime intended to be charged in the indictment, and simply contains a variance between the name of the deceased as contained in the indictment and the proof.

While there are some objections—for example, one of jurisdiction—which this court ought to raise *sua sponte,*

it is, aside from the statutes above referred to, bad practice for it to do so when the objection relates to any waivable matter; for one of the most frequent methods of waiving objections of this character is for counsel to simply state that he will make no point on it. This court is one of appellate jurisdiction only, and its office is to revise the action of the court below, and not to originate new questions here, not acted on there. In *Doe* v. *Natchez,* 8 Smedes & M. 205, Chief Justice Sharkey said: "It is a general rule that questions cannot be raised in this court which were not raised in the court below. It is our duty to review the decisions of the court below; but, if we decide new questions, not raised there, we assume original jurisdiction." And in *Commercial Bank* v. *Martin,* 9 Smedes & M. 621, speaking through Mr. Justice Clayton, it said: "It is insisted in argument that the whole proceedings in the probate court, as set out in the record, are void; that the sale under them is void, and consequently that the derivative title of the defendant is void. But these questions were not presented in the court below at all. The record was read without objection, and, if the questions had been there raised, those matters might possibly have been supplied, the absence of which it is now urged makes the whole void. It is said it was right to exclude the sheriff's deeds, because the proceedings in the probate court were void. That point should have been presented by exceptions to the admission of that record. This court is called on to correct an error of which neither party complained in the court below. This is against our usual mode of proceedings in questions of this kind, and would convert this into a court of original, not of appellate, jurisdiction." See, also, *Thompson* v. *Bank,* 85 Miss. 261, 37 South. 645, *Edwards* v. *Lumber Co.,* 92 Miss. 598, 46 South. 69, and *Ascher & Baxter* v. *Moyse & Co.,* 57 South. —, this day decided.

In the last-cited case, my brethren say that "this court is strictly a court of review, and it is only in rare in-

stances where the court will consider the merits of any
controversy, unless passed upon in the lower court.'' The
qualification which they seem to have made to the state-
ment that ''this court is strictly a court of review'' ap-
pears there for the first time, so far as I am aware, in
the decisions of this court.

For these reasons, I am unable to concur in the conclu-
sion reached by my brethren.